McGEE, Chief Judge.
*442 Where the evidence and findings of fact do not support the trial court's conclusion of law that grounds existed for termination of Respondent-Mother's parental rights, we reverse the trial court's order. Respondent-Mother ("Respondent") appeals from the trial court's order terminating her parental rights as to her son ("her son," "the son," or "the child") in this private termination action. Grounds for the termination were neglect, failure to make reasonable progress to correct the conditions that led to the removal of the son from Respondent's care, and dependency.
I. Facts and Procedural History
The Orange County Department of Social Services ("DSS") received a report on 4 October 2010 alleging that (1) Respondent was neglecting her son due to Respondent's mental health issues and drug use, (2) Respondent was leaving her son in unsafe situations in the home, and (3) Respondent was choosing unsafe childcare arrangements. Three days later, on 7 October 2010, Respondent left her son with a woman while she went to the grocery store. Respondent had just met the woman earlier that day. Respondent did not return to the woman's home to pick up her son, and later that evening family members located the son at the woman's home and he was placed with caretakers. Respondent was involuntarily committed to the hospital the next day. Respondent was later released from the hospital, and Child Protective Services provided in-home services.
Respondent was admitted to the UNC psychiatric clinic in January 2011 and was diagnosed with bipolar 1 disorder. DSS filed a juvenile petition on 25 January 2011, alleging that the child was a dependent and neglected juvenile. In an order entered 22 March 2011, the trial court adjudicated the child dependent but did not consider or rule upon the petition's neglect allegations. The trial court granted temporary custody to the child's "initial kinship" caregivers. Respondent received outpatient mental health services from February 2011 to March 2012. Respondent was then referred to the UNC Chatham Assertive Community Treatment ("ACT") Team, and has continued to work with the ACT Team.
After a review hearing on 2 June 2011, the trial court found that the caregivers were no longer able to care for the child and placed him in *443 DSS custody. DSS subsequently placed the child in a kinship placement with Mr. and Mrs. J ("Petitioners"), who were friends of Respondent. The trial court granted legal custody of the child to Petitioners on 8 August 2012 and he has remained in their care since that time. The trial court granted Respondent a minimum of one hour of supervised visitation every two weeks and relieved DSS and the guardian ad litem of further responsibility in the case.
Petitioners moved to Pennsylvania in 2014 and Respondent's visitation was changed to one week of visitation every three months at Petitioners' home. Respondent's visits went well, but she continued to struggle with mental health issues. From 2011 to 2015, Respondent was admitted for multiple psychiatric hospitalizations, both voluntary and involuntary.
*671 Despite Respondent's hospitalizations, Petitioners were committed to returning the child to Respondent's care.
However, on 17 July 2015, Petitioners filed a motion to modify visitation, alleging that the visitation schedule at the time was not in the child's best interest. In an order entered 7 October 2015, the trial court modified visitation to no longer require that Petitioners allow Respondent to stay in their home during visits, but continued the visitation schedule in all other respects.
Respondent was last hospitalized due to her mental illness in November 2015 and, since her release in December 2015, Respondent has remained symptom free from her bipolar disorder. However, Petitioners filed a petition to terminate Respondent's parental rights as to her son on 21 June 2016. The petition alleged the grounds of (1) neglect, (2) failure to make reasonable progress to correct the conditions that led to the son's removal from Respondent's care, and (3) dependency. N.C. Gen. Stat. § 7B-1111(a)(1)-(2), (6) (2017). After a hearing on 17 April 2017, the trial court entered an order on 11 May 2017 terminating Respondent's parental rights on all three alleged grounds. Respondent appeals.
II. Analysis
"This Court reviews a trial court's conclusion that grounds exist to terminate parental rights to determine whether clear, cogent, and convincing evidence exists to support the court's findings of fact, and whether the findings of fact support the court's conclusions of law." In re C.J.H., 240 N.C. App. 489, 497, 772 S.E.2d 82, 88 (2015). "If the trial court's findings of fact are supported by ample, competent evidence, they are binding on appeal, even though there may be evidence to the contrary." Id. (citation and quotation marks omitted). We review de novo whether a trial court's findings support its conclusions. See *444 In re S.N., X.Z. , 194 N.C. App. 142, 146, 669 S.E.2d 55, 59 (2008) (citation omitted), aff'd per curiam, 363 N.C. 368, 677 S.E.2d 455 (2009).
The trial court must make "specific findings of the ultimate facts established by the evidence, admissions and stipulations which are determinative of the questions involved in the action and essential to support the conclusions of law reached." Quick v. Quick , 305 N.C. 446, 452, 290 S.E.2d 653, 658 (1982). The trial court's ultimate findings "must arise 'by processes of logical reasoning from the evidentiary facts' found by the court." In re A.B. , --- N.C. App. ----, ----, 799 S.E.2d 445, 450 (2017) (quoting In re Anderson , 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002) ); see also In re D.M.O. , --- N.C. App. ----, ----, 794 S.E.2d 858, 861 (2016) ("[A] trial court must make adequate evidentiary findings to support its ultimate finding of willful intent." (citation omitted) ).
In the present case, the trial court made the following evidentiary findings of fact in support of its conclusion that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (2), and (6) to terminate Respondent's parental rights:
7. Petitioners have known Respondent since she was a teenager and are intimately familiar with Respondent's mental health issues and treatment. Respondent has a bipolar diagnosis. Since the [child] was placed with the caregivers in 2010, Respondent has had multiple episodes related to her mental illness that have left her incapable of properly caring for the [child]. Petitioners have had intimate knowledge of these episodes.
....
10. However, Respondent's behavior during visits in Pennsylvania was consistently concerning and demonstrated an ongoing and continuing inability to provide proper care. In 2015, this [c]ourt changed the visitation order to no longer require Petitioners to house Respondent during her quarterly visits. Respondent's behavior in their home was disturbing and was adversely impacting the [child]. Respondent has not always acted in the [child's] best interest during visits. By way of example, during one visit, Respondent indicated she was hungry. Petitioners allowed Respondent to take the [child] to a restaurant. Respondent bought and ate food, but Respondent did not buy anything for the [child]. By way of further example, the [child] has directed Respondent to end a *672 visit early so *445 that she might rest. While Petitioners have felt comfortable leaving the [child] with Respondent in their home for short unsupervised periods of time during visits, Petitioners have never felt Respondent was capable of supervising the [child] for any extended period of time.
11. Respondent has been working with the UNC ACT ("Assertive Community Treatment") team for several years, since at least before Petitioners attempted to reunite the [child] with Respondent in 2013. ACT provides "wrap-around" services for individuals with significant mental health concerns. Even with the provision of these intense services, Respondent is unable to provide proper care for the [child]. Dr. VanderZwaag testified Respondent would be capable of parenting the [child] with assistance, but Dr. VanderZwaag has never observed Respondent with the [child]. Dr. VanderZwaag acknowledged Respondent was last hospitalized due to her mental health illness in December 2015, more than five years after this case began due to similar mental health concerns.
12. Petitioners have observed Respondent over the course of many years, and Petitioners have an intimate familiarity with Respondent's parenting abilities. Petitioners are convinced Respondent lacks the ability to properly care for the [child]. Petitioners would not hesitate to reunite the [child] with Respondent if they thought otherwise. Petitioners have allowed Respondent to have "extra" visitation outside of the court-ordered schedule. Petitioners did not file the termination petition lightly. The [c]ourt believes Petitioners and accepts their testimony as true.
The trial court then made the ultimate findings of fact that:
13. Respondent has neglected the [child] and there is a reasonable probability Respondent would neglect the [child] if he were returned to her care.
14. Respondent has willfully left the [child] in placement outside the home for more than twelve months without showing to the satisfaction of this [c]ourt that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the [child].
*446 15. Respondent is incapable of providing for the proper care and supervision of the [child], such that the [child] is a dependent juvenile within the meaning of [N.C.]G.S. 7B-101, and there is a reasonable probability that such incapability will continue for the foreseeable future. Respondent lacks an appropriate alternative child care
A. Reasonable Progress
Respondent first asserts the trial court erred in terminating her parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(2), which provides that the court may terminate parental rights upon a finding that a parent has "willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen. Stat. § 7B-1111(a)(2) (2017).
Respondent contends the trial court's findings of fact are insufficient to support its ultimate finding that she failed to make reasonable progress in correcting the conditions that led to her son's removal in that the findings are vague and incomplete and do not address her progress or lack of progress leading up to the termination hearing. Therefore, Respondent contends the findings of fact are insufficient to support the trial court's conclusion that grounds existed to terminate her parental rights pursuant to N.C.G.S. § 7B-1111(a)(2). We agree.
The trial court must perform a two-part analysis to terminate parental rights under N.C. Gen. Stat. § 7B-1111(a)(2). In re O.C. & O.B. , 171 N.C. App. 457, 464, 615 S.E.2d 391, 396, disc. review denied , 360 N.C. 64, 623 S.E.2d 587 (2005).
The trial court must determine by clear, cogent and convincing evidence that a child has been willfully left by the parent in foster care or placement outside the home for over twelve months, and, further, that as of the time of the hearing, as demonstrated *673 by clear, cogent and convincing evidence, the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child.
Id. at 464-65, 615 S.E.2d at 396.
A parent's reasonable progress "is evaluated for the duration leading up to the hearing on the motion or petition to terminate parental rights." In re A.C.F. , 176 N.C. App. 520, 528, 626 S.E.2d 729, 735 (2006). In the *447 present case, however, the trial court did not make any findings regarding Respondent's conduct or circumstances over the fifteen months prior to the termination hearing.
According to unchallenged finding of fact 3, the child was removed from Respondent's care due to Respondent's mental health issues and drug use, and DSS's concern for the child's care and well-being. However, a review of the record and transcript shows that the trial court based its termination of Respondent's parental rights primarily on the issue of her mental health. Indeed, the trial court did not make any findings regarding Respondent's progress or lack of progress in correcting her past drug use or the condition of her home at the time of the hearing. The trial court essentially relied on three findings of fact in order to support its ultimate finding and conclusion that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(2) to terminate Respondent's parental rights. These findings, however, are insufficiently specific to support the ultimate finding that Respondent failed to make reasonable progress.
In finding of fact 7, although the trial court found that Respondent had multiple episodes relating to her mental illness since her diagnosis in 2011, the finding fails to include any information pertaining to what constituted an "episode" and the nature of the "episodes," including Respondent's condition and behavior during an episode. The finding also lacks any details regarding how many or how often Respondent had episodes, when the last episode occurred, or how the episodes "left her incapable of properly caring for [her son]."
In finding of fact 10, the trial court found that Respondent's behavior during her visits with Petitioners was "consistently concerning" and "disturbing." However, the trial court failed to find with any particularity what behavior it found to be "concerning" and "disturbing[,]" and whether this behavior related in any manner to Respondent's mental health and her ability to care for her son.
In finding of fact 11, the trial court found that "[e]ven with the provision of [the ACT] intense services, Respondent is unable to provide proper care for [her son]." However, the trial court made no finding as to why or how, despite these services, Respondent was not able to provide proper care for her son or what specifically she was doing or not doing to address her mental health issues.
The trial court's findings demonstrate only that Respondent has had multiple "episodes" since 2010 due to her mental health issues, that her last hospitalization was in December 2015, that Respondent has been working with the UNC ACT team for several years, and that she had *448 exhibited some form of "concerning" and "disturbing" behavior during visits. We conclude that these findings are insufficient to support the trial court's ultimate finding that, at the time of the termination hearing in April 2017, Respondent willfully left her son in Petitioners' care without making reasonable progress to correct the conditions that led to his removal from her care. The findings fail to address any progress or lack of progress by Respondent in correcting the conditions that led to her son's removal in the months prior to the termination hearing.
Indeed, the evidence tended to show that Respondent had made significant progress in addressing her mental health issues. Respondent's psychiatrist testified that Respondent had "shown progressive improvement overall," noting that although Respondent did have some episodes of illness over the past five years, she had been free of all mood symptoms since the time of her last discharge in December 2015. The evidence further showed that, although Respondent was at risk for future episodes, as is the nature of a bipolar diagnosis, she had shown a growing understanding of bipolar illness and her response to medications, had been stable for the fifteen months prior to the termination hearing, and had been working *674 with her psychiatrist about recognizing early warning signs and interventions in order to prevent further episodes. Respondent's psychiatrist testified that Respondent was committed to working on her mental health and in making changes to improve her mental health stability, and that her overall prognosis was very good.
Further, the evidence showed Respondent had been living in an apartment for nearly four years, was in good standing with the housing authority, had a part-time job, and received additional income through disability. The evidence also showed that Respondent was free from drug use and that her history of substance use was "related [primarily] to ... mood symptoms (i.e. lack of judgment and insight associated with mania) and unrelated to an enduring pattern of disordered use."
Petitioners testified Respondent behaved inconsistently during the visits in their home in Pennsylvania, stating that some visits went well, while in other visits Respondent was "less bubbly" and in a depressed mood, was "off," or was less engaged with her son. However, Petitioners presented no further evidence of Respondent's lack of reasonable progress in addressing her mental health issues and they presented no evidence regarding Respondent's current drug use, employment, or housing condition. Thus, we conclude Petitioners failed to present sufficient evidence to meet the statutory requirement of clear, cogent, and convincing evidence that Respondent had not made reasonable progress in correcting the conditions that led to the removal of her son from her care.
*449 Because the evidence and findings were insufficient to support the trial court's ultimate finding that Respondent failed to make reasonable progress, we hold the findings do not support the conclusion that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(2) to terminate Respondent's parental rights. Therefore, the trial court erred in terminating Respondent's parental rights on this ground.
B. Neglect
Respondent next argues the findings of fact were insufficient to support termination on the ground of neglect because the trial court made no findings regarding Respondent's situation and condition at the time of the termination hearing in order to show a likelihood of repetition of neglect. We agree.
A trial court may terminate parental rights upon a finding that the parents have neglected the juvenile within the meaning of N.C. Gen. Stat. § 7B-101(15). N.C.G.S. § 7B-1111(a)(1). In relevant part, N.C. Gen. Stat. § 7B-101(15) (2017) defines a neglected juvenile as one "who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care[.]"
"Where, as here, a child has not been in the custody of the parent for a significant period of time prior to the termination hearing, the trial court must employ a different kind of analysis to determine whether the evidence supports a finding of neglect." In re Pierce , 146 N.C. App. 641, 651, 554 S.E.2d 25, 31 (2001), aff'd , 356 N.C. 68, 565 S.E.2d 81 (2002). The trial court must consider "evidence of changed conditions in light of the history of neglect by the parent, and the probability of a repetition of neglect." Id . (citing In re Ballard , 311 N.C. 708, 714, 319 S.E.2d 227, 231 (1984) ).
Although the child was not previously adjudicated neglected, in finding of fact 3, the trial court found that, on 7 October 2010, Respondent left her son with a woman she had just met earlier that day, and that Respondent did not return to the woman's home to pick up her son. Respondent does not challenge this finding, and it is now binding on appeal. See Koufman v. Koufman , 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). This finding supports the trial court's ultimate finding that Respondent had previously neglected her son. The evidentiary findings, however, are insufficient to support the trial court's ultimate finding that there was a reasonable probability that the child would be neglected if returned to Respondent's care.
*450 In finding of fact 7, the trial court discussed Respondent's mental health history, *675 including her bipolar diagnosis and found that she "has had multiple episodes related to her mental illness" since 2010. In finding of fact 10, the trial court found that Respondent's behavior during her visits in Pennsylvania "was consistently concerning" and "disturbing[,]" "adversely impact[ed] the [child,]" and "demonstrated an ongoing and continuing inability to provide proper care." The trial court found in finding of fact 11 that "[e]ven with the provision of [the ACT team] intense services, Respondent is unable to provide proper care for [her son]."
The trial court's ambiguous findings provide little light on the circumstances and condition of Respondent's mental health issues at the time of the termination hearing or the impact they had on the child. Although the trial court found that Respondent's behavior adversely impacted her son, the court's findings are not sufficiently specific to determine what behavior Respondent was exhibiting and how that behavior negatively impacted her son.
The terms "concerning" and "disturbing" are subjective and, without further explanation detailing the specific behavior in question and how that behavior impacted Respondent's ability to care for her son, this finding is insufficient to show a likelihood that the child would be neglected if returned to Respondent's care. For example, while one individual may find swearing to be concerning or disturbing behavior, this behavior does not necessarily pertain to a parent's inability to provide proper care for a child.
The trial court further found that Respondent did not always act in the child's best interests during visits. In support of this finding, the trial court found that on one occasion Petitioners allowed Respondent to take her son to a restaurant where Respondent purchased food for herself but did not buy food for him. During another visit, Respondent appeared tired and her son told her to go back to the hotel early so that she might rest. However, the finding provides no detail regarding when these instances occurred.
At most, the trial court's findings show that Respondent has had "multiple" episodes since 2010, has exhibited some type of "concerning" or "disturbing" behavior during some visits, did not purchase food for her son at a restaurant on one occasion for an unknown reason, and was tired during one visit. These findings lack any specificity regarding Respondent's inability to provide proper care at the time of the termination hearing in order to support a finding of a likelihood of repetition of *451 neglect if her son was returned to her care. Therefore, we hold the findings are insufficient to support the trial court's ultimate finding and conclusion that grounds existed to terminate Respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1).
Further, the probability of repetition of neglect in this case is not shown by clear, cogent, and convincing evidence. Mr. J testified that Respondent's visits in Pennsylvania went well, but sometimes she was less engaged or had a depressed mood. Although the visits were supervised, Petitioners did leave Respondent alone with her son for an hour or two at a time. Mr. J testified that Respondent's last visit in December 2016 was "a little choppy" because she arrived tired and showed up late the next day. Additionally, Mr. J testified that Respondent was "off" in making good decisions for her son, explaining that sometime "last year," Respondent chose to get portraits done of her son rather than purchase pull-ups for him, and on one occasion she did not purchase food for him at a restaurant, though he did have a bite of the food from her plate.
Mrs. J testified that "almost a year" ago, she stopped allowing Respondent to phone her son because Respondent refused to pick a particular day of the month to call. Mrs. J further testified that during some visits Respondent was "absolutely wonderful" and "so awesome with [her son]" but during some visits "she just wasn't there."
Petitioners' evidence pertained primarily to conduct occurring at least six months prior to the hearing. This lack of temporal proximity simply does not support a finding that Respondent was incapable of providing proper care at the time of the termination hearing and that there was a likelihood of repetition of neglect. The most recent example of Respondent's *676 inability to care for her son was that she appeared tired at the December 2016 visit. Petitioners presented no evidence of Respondent's inability to properly care for her son at the time of the hearing other than their assertions that they did not believe Respondent was capable. This is not clear, cogent, and convincing evidence to support a finding that "there is a reasonable probability Respondent would neglect [her son] if he were returned to her care."
Because the evidence and findings are insufficient to support a finding that the child is likely to be neglected if returned to Respondent's care, we hold the trial court erred in terminating Respondent's parental rights on the ground of neglect.
C. Dependency
Pursuant to N.C. Gen. Stat. § 7B-1111(a)(6), a court may terminate parental rights on the ground that the parent is incapable of providing *452 for the proper care and supervision of the child and the incapability will continue for the foreseeable future. N.C.G.S. § 7B-1111(a)(6). The incapability under this statute "may be the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement." Id. "In determining whether a juvenile is dependent, the trial court must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements." In re T.B., C.P., & I.P., 203 N.C. App. 497, 500, 692 S.E.2d 182, 184 (2010) (citations and quotation marks omitted).
Respondent argues the trial court erred in terminating her parental rights on the ground of dependency because the trial court failed to make any specific findings regarding Respondent's ability to care for her son at the time of the hearing. Respondent also argues that the evidence was insufficient to support the finding that she had a current incapability that would continue for the foreseeable future. We agree.
The trial court found in findings of fact 7, 10, and 12 that Respondent was unable to provide proper care for the child. However, this determination is more properly a conclusion of law as it requires the application of legal principles to the facts of the case, and as such must be supported by sufficient evidentiary findings. See N.C. Gen. Stat. § 7B-101(9) (2017) ; Guox v. Satterly, 164 N.C. App. 578, 583, 596 S.E.2d 452, 455, disc. review denied , 359 N.C. 188, 606 S.E.2d 906 (2004) ; see also In re B.W., 190 N.C. App. 328, 335, 665 S.E.2d 462, 467 (2008) ("If a contested 'finding' is more accurately characterized as a conclusion of law, we simply apply the appropriate standard of review and determine whether the remaining facts found by the court support the conclusion.") (citations omitted).
For the same reasons discussed in sections A and B above, we hold the trial court's findings are insufficient to support its ultimate finding and conclusion that Respondent was incapable of providing for the proper care of her son and that such incapability would continue for the foreseeable future. As stated previously, the trial court failed to include any detailed findings pertaining to Respondent's progress or lack of progress in addressing her mental health concerns over the fifteen months prior to the termination hearing. Rather the findings regarding Respondent's mental health and parenting abilities pertain more to the historic facts of the case that occurred at least a year prior to the hearing, and the order contains no specific findings regarding Respondent's condition, mental health, and alleged incapability at the time of the hearing.
*453 In support of Petitioners' assertion that, at the time of the termination hearing, Respondent was incapable of caring for her son, they testified to specific events occurring a year before the termination hearing. The only support occurring within six months of the termination hearing was that Respondent appeared tired at the December 2016 visit and arrived late to Petitioners' home the following morning. Petitioners did not present any evidence that Respondent was not following her mental health treatment recommendations. The uncontradicted evidence of Respondent's psychiatrist showed that Respondent was participating and following her *677 ACT services, was committed to her treatment, and had been symptom free for over a year. Thus, we hold Petitioners failed to present clear, cogent, and convincing evidence to support the trial court's finding that Respondent was currently incapable of caring for her son and that such incapability would continue for the foreseeable future. Cf. Matter of A.L.L. , --- N.C. App. ----, ----, 802 S.E.2d 598, 609 (2017) (upholding the trial court's termination of the mother's parental rights based on dependency, holding that evidence of the mother's "longstanding mental health conditions and her repeated failures to follow recommendations for treatment necessary to care for her children safely constituted clear, cogent, and convincing evidence to support the trial court's findings of dependency").
Because we hold that the evidence and findings were insufficient to support the trial court's ultimate finding and conclusion that grounds existed to terminate parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(6), the trial court erred in terminating Respondent's parental rights on the ground of dependency.
III. Conclusion
The trial court's findings were insufficient to support its ultimate findings and conclusion that grounds existed to terminate Respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (2), or (6). Accordingly, we reverse the trial court's order terminating Respondent's parental rights as to her son.
REVERSED.
Judge STROUD concurs.
Judge BRYANT dissents with separate opinion.