An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-271

Filed 15 October 2025

Polk County, Nos. 22JT000032-740, 22JT000033-740

In re: C.H., A.H.

Appeal by Respondent-Mother from orders entered 23 December 2024 by Judge Abraham Hudson in Polk County District Court. Heard in the Court of Appeals 23 September 2025.

*Hanna Frost for Petitioner-Appellee Polk County Department of Social Services.*

*Hooks Law, P.C., by Laura G. Hooks, for Respondent-Appellant Mother.*

*Elon University School of Law Guardian ad Litem Appellate Advocacy Clinic, by Alan D. Woodlief, Jr., and certified students Bianca Blanks, Madison Gilbert, Alyson Hanlon, Jordan Holloway, Marcella McIntyre, and Caylin Perdue, for guardian ad litem.*

GRIFFIN, Judge.

Mother[1] appeals from the trial court's orders terminating parental rights to her two sons, Cooper and Asa.[2] Mother argues the trial court erred in concluding

---

[1] Father did not appeal.

[2] We use pseudonyms to protect the identities of the children. See N.C. R. App. P. 42(b).

IN RE: C.H., A.H.

Mother both willfully left her children in foster care without showing reasonable progress and neglected them. Mother additionally claims the trial court erred in finding Cooper and Asa were dependent. She further alleges the trial court mistakenly terminated her parental rights for willful nonsupport. Mother also asserts some of the trial court's findings of fact were not sufficiently supported by clear, cogent, and convincing evidence. We affirm the trial court's orders.

## I.    Factual and Procedural Background

In August 2021, Henderson County Department of Social Services ("HCDSS") received information concerning Cooper and Asa's alleged injurious environment living with their parents. At that time, Cooper was age two and Asa was one year old. The family home had unsafe features. After wiring their home to an adjacent camper without the expertise of a licensed electrician, the family created both fire and shock hazards in their home. Upon unannounced visits to the family home, HCDSS noticed excessive debris and garbage within and surrounding the home. Mother and Father minimized their home's safety concerns and left the family home in a hazardous condition.

In September 2021, Mother and Father entered into a safety plan with HCDSS. During the safety plan, Cooper and Asa stayed with the maternal grandmother.

On 1 October 2021, HCDSS received another report alleging Cooper and Asa's parents appearing impaired when they dropped off the children, in a dirty and smelly state, at daycare. Mother and Father denied drug impairment but refused to submit

to drug screens. Later that same day, Mother tested positive for methamphetamine and amphetamine. Both Mother and Father have substance abuse and domestic violence histories.

On 4 October 2021, HCDSS filed a juvenile petition alleging the children were neglected and obtained the children's nonsecure custody. Later the same month, Cooper and Asa tested positive for exposure to and/or ingestion of methamphetamine and amphetamine. About two months later, the trial court entered a consent adjudication order and disposition order. The trial court found Cooper and Asa neglected.

While Cooper and Asa were residing with the grandmother, they stayed in an overcrowded hotel room without proper sleeping arrangements and supervision. Shortly after, the children were placed with a couple, who, at the time, were in the process of becoming licensed foster parents.

On 20 January 2022, at the permanency planning and review hearing, the trial court ordered a primary plan of reunification and a secondary plan of parental rights termination with subsequent adoption. In accordance with Mother's reunification plan, she completed her comprehensive clinical assessment, attended some classes for substance abuse intensive outpatient program, visited with her children, obtained employment, and provided HCDSS with her phone number and address. However, Mother failed to attend two-thirds of the substance abuse intensive outpatient program classes, maintain communication and in-person contact with HCDSS, test

negative for drugs, enroll in a parenting class, establish child support, and provide proof of income. Also, during some of Mother's visits with Cooper and Asa, HCDSS sometimes had to intervene to redirect the conversation to age-appropriate matters. At one visitation, HCDSS reported Mother seemed to be in a daze and even fell asleep in the later part of the visit.

Cooper, presented as delayed and non-verbal, had not received any speech therapy or developmental assessments at two years old. Both children have special needs related to speech and occupational therapy. Cooper and Asa have hearing loss diagnoses. Asa suffers with eye problems. Before HCDSS intervention, these special needs went unaddressed.

In mid-August 2023, Cooper and Asa were moved to a new, licensed foster home in Henderson County. The Henderson County foster parents have bonded with Cooper and Asa and are interested in adopting them.

About a month later, the trial court held the next permanency planning review hearing in Polk County. Mother and Father continued to reside in the family home, previously deemed an injurious environment for children. While the parents made the family home safer in October 2022 as indicated by a home inspection company, Polk County Department of Social Services ("PCDSS") visited the home in March 2023 and reported safety concerns including exposed wires hanging from the ceiling so low that the children could grab them. Furthermore, PCDSS noted the family home still had debris and litter around the property, which posed safety concerns for

children. Just months later, the home burned to the ground.

Furthermore, although Mother made some child support payments in Henderson County (even though they were often towards the arrears), she did not make any child support payments after the case transferred to Polk County.

On 12 October 2023, the trial court ordered the cessation of reunification efforts and changed the primary plan to adoption, as a result of Mother's lack of efforts in her case plan.

The trial court concluded there were four grounds for termination of parental rights including willfully leaving the children in foster care without making adequate progress, neglect, dependency, and willfully failing to pay a reasonable portion of the cost of care. On 23 December 2024, the trial court terminated the parental rights of both Mother and Father. Mother timely appeals.

## II. Analysis

Mother contends a number of the trial court's findings of fact were unsupported by clear, cogent, and convincing evidence and the trial court's findings of fact failed to support its conclusions of law.

The termination of parental rights involves both adjudication and disposition. *Matter of S.R.*, 384 N.C. 516, 520, 886 S.E.2d 166, 171 (2023). At the adjudication stage, the party advocating for termination must demonstrate "clear, cogent, and convincing evidence" to support the trial court's findings of fact. *Id.* This Court reviews a trial court's findings by determining whether such evidence supported the

findings. *Matter of L.C.*, 387 N.C. 475, 479–80, 915 S.E.2d 106, 110 (2025); *Matter of Z.D.*, 258 N.C. App. 441, 443, 812 S.E.2d 668, 671 (2018). A trial court's finding of fact is conclusive on appeal if the evidence reasonably supports it, despite record evidence to the contrary. *Matter of G.C.*, 384 N.C. 62, 65, 884 S.E.2d 658, 661 (2023); *Matter of B.R.L.*, 381 N.C. 56, 58, 871 S.E.2d 491, 493 (2022). Appellate courts limit review of the findings to those "'necessary to support the trial court's determination'" of a ground for termination of parental rights. *B.R.L.*, 381 N.C. at 58, 871 S.E.2d at 493 (citation omitted). Unchallenged findings of facts are deemed supported by the evidence and are binding on appeal. *Matter of D.D.M.*, 380 N.C. 716, 720, 869 S.E.2d 693, 696 (2022) (citation omitted).

The findings of fact must support the conclusions of law. *Matter of K.N.*, 381 N.C. 823, 827, 874 S.E.2d 594, 598 (2022) (citation omitted). This Court reviews conclusions of law de novo. *Id.*

Following the adjudication stage where the trial court finds at least one ground for terminating parental rights, the disposition stage requires the trial court to determine whether such termination is in the best interest of the child. N.C. Gen. Stat. § 7B-1110(a) (2023). This Court reviews the trial court's determination at the disposition stage for abuse of discretion. *In re Anderson*, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002).

There are multiple grounds upon which a trial court may terminate parental rights, but only one ground is necessary. N.C. Gen. Stat. § 7B-1111(a) (2023). In

analyzing one of the specific grounds for termination of parental rights, the trial court must conduct a two-step process in determining, by "clear, cogent, and convincing evidence," whether (1) the child was willfully left in foster care or another placement outside the home for longer than twelve months and (2) the parent failed to make reasonable progress to fix the conditions that originally triggered the child's removal. *Matter of A.H.F.S.*, 375 N.C. 503, 507, 850 S.E.2d 308, 313 (2020) (citation omitted).

A trial court judge should refrain from finding that a parent has not made reasonable progress simply for failure to fully complete the case plan objectives, but the judge has authority to determine that a dearth of progress supports a termination of parental rights. *Matter of A.B.C.*, 374 N.C. 752, 760, 844 S.E.2d 902, 909 (2020) (citation omitted). The trial court evaluates reasonable progress during the time leading up to the parental rights termination hearing. *Matter of Z.D.*, 258 N.C. App. 441, 446, 812 S.E.2d 668, 673 (2018) (citation omitted). Willfulness is evidenced by a parent's ability to fix the condition that led to a child's removal but reluctance to make necessary efforts. *Matter of L.E.W.*, 375 N.C. 124, 136, 846 S.E.2d 460, 469 (2020) (citation omitted). A parent's prolonged inability to make improvements, despite some efforts made, supports determinations of willfulness and a lack of reasonable progress. *In re J.S.*, 374 N.C. 811, 815, 845 S.E.2d 66, 71 (2020) (citation omitted).

To succeed on appeal, an appellant must show the trial court's error was "'material and prejudicial, amounting to denial of a substantial right that will likely

affect the outcome of an action.'" *L.E.W.*, 375 N.C. at 128, 846 S.E.2d at 465 (citation omitted).

## A. Findings of Fact

Mother argues many of the trial court's findings of fact were not supported by clear, cogent, and convincing evidence. However, Mother did not challenge numerous findings of fact: finding of fact fifteen explains Cooper and Asa were removed from the family home due to parental substance abuse, Mother and Father's mental health problems, domestic violence between the couple, a lack of parenting skills, and an unsafe environment for the children; findings of fact sixteen through thirty-eight, forty, forty-seven, seventy-eight, seventy-nine, eighty-one through eighty-five, eighty-nine, and ninety-six demonstrate Mother's unceasing issues that could harm the children including substance abuse evidenced by positive drug screens, an unsafe family home, failure to satisfactorily comply with her case plan despite assistance offered, relations with Father despite domestic violence, sporadic employment and income, and failure to obtain proper services for her kids; findings of fact fifty-three, fifty-six, fifty-eight, and ninety-eight express that both Cooper and Asa have special needs that require supervision, but Mother failed to attend one of the Individualized Education Program meetings; in findings of fact sixty-six and sixty-nine, Dr. Cappaletty, clinical psychologist, determined Mother's greatest threat to her parenting abilities stemmed from her substance abuse and her failure to recognize the reasons for her children's removal, and thus Dr. Cappaletty recommended a long

period of sobriety before Mother's reunification with Cooper and Asa; findings seventy and 107 found that Mother failed to acknowledge that her choices and behavior led to the removal of her kids; and findings of fact seventy-one through seventy-five found Mother continually struggled to regulate her emotions, was arrested for assault while the children were in foster care, and had angry outbursts around hearings and visits with Cooper and Asa.

Since these findings of facts were unchallenged, they are deemed supported by the evidence and binding on appeal. Since this Court only needs to review "those findings necessary to support the trial court's determination that" at least one ground existed for termination of parental rights, the Court of Appeals does not need to review the few findings of fact and partial findings of fact that Mother claims are insufficiently supported by evidence. *B.R.L.*, 381 N.C. at 58, 871 S.E.2d at 493. Furthermore, since Mother failed to demonstrate that the alleged unsupported findings were material and prejudicial such that a different outcome would have been likely, the alleged claims stating that certain fact findings are unsupported by clear, cogent, and convincing evidence fail.

## B. Conclusions of Law

Mother argues the trial court incorrectly decided the following conclusions of law: Mother neglected the juvenile children; Mother willfully left her children in foster care for longer than twelve months without showing reasonable progress to the court's satisfaction; the children have been placed in foster care and Mother willfully

failed to pay a reasonable portion of the cost of care for her children; and Mother is incapable of providing proper care and supervision, such that the children are dependent, and there is a reasonable probability that this incapability will persist.

The trial court's order will be affirmed if at least one ground exists for termination. N.C. Gen. Stat. § 7B-1111(a). We will address the trial court's finding that Mother willfully left her children in foster care for more than a year and failed to make reasonable progress in correcting the conditions that caused her children's removal.

Mother argues the trial court's findings of fact are insufficient to support the conclusion that she willfully left her children in foster care without showing reasonable progress. Here, it is undisputed that both children were placed outside of the home for over twelve months. Thus, the analysis includes whether the trial court correctly determined Mother (1) *willfully* left her children in foster care for the statutory period and (2) failed to make reasonable progress.

It is true Mother made some progress including that she submitted to some drug screens, paid some child support in Henderson County (although often only towards arrears owed), completed a comprehensive clinical assessment and substance abuse intensive outpatient therapy, detoxed for a week, earned a parenting class certificate, visited with her children, and had employment and housing. These efforts demonstrated some progress on her case plan. We acknowledge that failure to complete case plan objectives should not be the sole basis for finding that a parent

has not made reasonable progress. *See A.B.C.*, 374 N.C. at 760, 844 S.E.2d at 909.

However, a dearth of progress supports the termination of parental rights. Taken as a whole, Mother's progress was insufficient. While Mother completed some substance abuse intensive outpatient therapy, she only completed *one-third* of the program classes. Although Mother put some effort into these classes, she showed a reluctance to take these classes seriously despite her ability to complete them.

Despite Mother's completion of some substance abuse intensive outpatient therapy, she continued to abuse drugs. HCDSS requested Mother to submit to drug screens twenty-six times between late December 2021 and mid-October 2022. Of these requests, Mother failed to comply with seventeen and tested positive three times for amphetamines or methamphetamines. Between December 2022 and July 2024, Mother was called to submit twenty-two drug screens in Polk County, but she failed to comply with six of them and tested positive five times for amphetamines, methamphetamines, and/or THC. In other words, during that time, Mother only properly complied with 50% of the drug screens, demonstrating a lack of reasonable progress, especially considering ample time to make improvements. Furthermore, Mother's mom testified in early November 2024 that she saw Mother intoxicated just two weeks prior. In 2024, Mother admitted to Services Supervisor Tessner that she had been drinking alcohol as a coping mechanism. Mother's substance abuse has persisted despite assistance offered to her. Despite her ability to improve her drug use with programs such as the substance abuse intensive outpatient therapy, Mother

has failed to make essential efforts such as attending all the offered classes. Mother has had years to make improvements, but has not made reasonable progress.

Although Mother had housing, it was an injurious environment. The family home presented fire hazards. In April 2024, PCDSS provided the parents with four smoke detectors, but Mother and Father failed to take any action to install the smoke detectors until PCDSS made another home visit more than a month later. This demonstrates a failure to make satisfactory efforts. The family home burned down a few months later. Additionally, the home environment was injurious as it remained cluttered with debris and litter, even at PCDSS's most recent visit in 2023. This failure to make improvements to the home's condition shows Mother's willfulness in leaving her children in foster care.

Furthermore, Mother continued to engage in her relationship with Father despite the domestic violence and his mutual drug use. Mother attempted to conceal her relationship with Father from Services Supervisor Tessner upon a visit by hiding Father in a closet. In April 2024, Mother expressed that she "was not able to make it on her own without [Father]." Moreover, in June 2024, Father engaged in two separate aggressive acts including punching Mother in the back and shoving her out the door. Mother failed to take steps to remove herself from the abusive relationship.

As part of her case plan, Mother was required to contribute child support. Mother did make some child support payments. However, in Henderson County, Mother's payments were frequently only enough to go towards her arrears.

Furthermore, after the case transferred to Polk County, Mother did not make any child support contributions. The child supports decline over time does not demonstrate any progress; by definition, this trend exhibits the opposite.

Mother had ample ability and time to improve the conditions at home which led to the removal of Cooper and Asa: about three years. This Court recognizes that Mother did in fact make some progress. However, considering Mother's entire history during the relevant time, we affirm the trial court's conclusion that Mother willfully left her children in foster care for over a year and failed to make reasonable progress. Because at least one ground exists for the termination of parental rights, this Court does not need to address the additional grounds for the termination of parental rights.

### III.    Conclusion

In conclusion, the trial court's unchallenged findings of fact are supported by clear, cogent, and convincing evidence. Additionally, we affirm the trial court's conclusion that Mother willfully left her children in foster care for more than a year and did not make reasonable progress.

AFFIRMED.

Judges STROUD and COLLINS concur.

Report per Rule 30(e).