IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-91

 No. 446A20

 Filed 27 August 2021

 IN THE MATTER OF: A.C.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from orders entered on 13 July

 2020 by Judge Marion M. Boone in District Court, Stokes County. This matter was

 calendared for argument in the Supreme Court on 21 June 2021, but was determined

 on the record and briefs without oral argument pursuant to Rule 30(f) of the North

 Carolina Rules of Appellate Procedure.

 Jennifer Oakley Michaud for petitioner-appellee Stokes County Department of
 Social Services.

 James N. Freeman, Jr., for appellee Guardian ad Litem.

 Jeffrey L. Miller for respondent-appellant mother.

 ERVIN, Justice.

¶1 Respondent-mother Krissy M. appeals from the trial court’s orders terminating

 her parental rights in A.C.1 After careful review of the trial court’s termination orders

 in light of the record and the applicable law, we conclude that those orders should be

 affirmed.

 1 A.C. will be referred to throughout the remainder of this opinion as “Arty,” which is

 a pseudonym used for ease of reading and to protect the juvenile’s privacy.
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

¶2 On 13 July 2018, the Stokes County Department of Social Services filed a

 petition alleging that Arty was a neglected juvenile. In its petition, DSS alleged that

 it had received a child protective services report on 29 June 2018 stating that Arty,

 who had just been born, was in the neonatal intensive care unit as the result of

 possible drug exposure and respiratory distress. According to DSS, respondent-

 mother had admitted to having taken Subutex, which she purchased “off the street,”

 and was suffering from withdrawal symptoms that included being “jittery[,] [s]haky,

 [and] sweaty.” After expressing concern that respondent-mother “may be using

 something else now,” DSS stated that she was “taking Subutex in the hospital and

 it[’]s now prescribed by a doctor.” Although a drug test that respondent-mother had

 taken while hospitalized had produced negative results, DSS asserted that Arty’s

 umbilical cord had tested positive for the presence of amphetamines and Subutex at

 the time of his birth. DSS further alleged that respondent-mother had told social

 workers “that she had been getting Subutex off the street for the last four years due

 to her ‘getting hooked’ on pain medication after a car accident” and that she had been

 taking Adderall to help with her depression despite the fact that she did not have a

 prescription authorizing her to use that substance. On the same date upon which the

 petition was filed, DSS obtained the entry of an order providing that Arty should be

 taken into nonsecure custody.
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

¶3 After a hearing held on 27 September 2018, Judge Gretchen H. Kirkman, with

 respondent-mother’s consent, entered an order on 30 October 2018 determining that

 Arty was a neglected juvenile. On 30 October 2018, Judge Kirkman entered a

 separate dispositional order providing that Arty would remain in DSS custody and

 establishing a primary permanent plan for Arty of reunification with a parent and a

 concurrent permanent plan of guardianship. In addition, Judge Kirkman ordered

 that respondent-mother enter into a Family Services Case Plan and comply with its

 provisions. Finally, Judge Kirkman authorized respondent-mother to have four

 hours of supervised visitation with Arty each week on the condition that she provide

 negative drug screens.

¶4 After a review hearing held on 28 March 2019, Judge Thomas Langan entered

 an order on 10 May 2019 in which he found that respondent-mother was living with

 her own mother, that she was struggling with anxiety and depression, that these

 mental health difficulties were interfering with her efforts to satisfy the requirements

 of her case plan, that she had not been attending parenting classes or receiving

 mental health treatment since December 2018, and that she had not had a domestic

 violence assessment. As a result, Judge Langan ordered respondent-mother to

 comply with the requirements of her case plan and to cooperate with the drug

 screening process.
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

¶5 In the aftermath of a review hearing held on 8 August 2019, the trial court

 entered a permanency-planning order on 10 September 2019 in which it found that

 respondent-mother continued to live with her mother, continued to struggle with

 anxiety and depression, and had not attended parenting classes or mental health

 treatment since December 2018 until restarting treatment in May 2019. In addition,

 the trial court found that respondent-mother had refused to participate in the drug

 screening process, had failed to appear for the purpose of providing a sample to be

 screened in December and January, had not been screened for drugs from December

 2018 through 22 March 2019, had failed to appear for a scheduled drug screen on 10

 June 2019, and had admitted to having taken Adderall that was purchased

 unlawfully. The trial court further found that respondent-mother had failed to

 participate in a second psychological evaluation that she had been ordered to obtain

 after reporting that she had ceased making any effort to satisfy the requirements of

 her case plan as the result of anxiety and depression. Moreover, the trial court also

 found that respondent-mother had reported that she had been involved in an incident

 of domestic violence during which Arty’s father had become violent and which had

 led her to obtain the entry of a domestic violence protective order against Arty’s

 father. Finally, the trial court found that respondent-mother had failed to

 demonstrate that she was employed. As a result, the trial court changed Arty’s

 primary permanent plan to one of adoption.
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

¶6 Following a permanency-planning hearing held on 10 October 2019, the trial

 court entered an order on 7 November 2019 determining that respondent-mother was

 obtaining housing with Arty’s father, had completed a domestic violence support

 group, had completed parenting classes, and had obtained a psychological evaluation.

 On the other hand, the trial court also found that respondent-mother continued to

 either refuse to participate in the drug screening process or to fail to appear upon

 occasions when she was requested to provide a sample for screening and that she had

 tested positive for the presence of Subutex and methamphetamines on 4 September

 2019. In addition, the trial court found that respondent-mother had failed to attend

 Arty’s medical appointments.

¶7 On 7 November 2019, DSS filed a motion seeking to have respondent-mother’s

 parental rights in Arty terminated on the basis of neglect, N.C.G.S. § 7B-1111(a)(1)

 (2019); willful failure to make reasonable progress toward correcting the conditions

 that had led to Arty’s removal from her care, N.C.G.S. § 7B-1111(a)(2); and

 dependency, N.C.G.S. § 7B-1111(a)(6). On 13 July 2020, the trial court entered an

 adjudicatory order determining that respondent-mother’s parental rights in Arty

 were subject to termination on the basis of all three grounds for termination alleged

 in the termination motion and a separate dispositional order determining that the

 termination of respondent-mother’s parental rights would be in Arty’s best interests.
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

 As a result, the trial court terminated respondent-mother’s parental rights in Arty.2

 Respondent-mother noted an appeal to this Court from the trial court’s termination

 orders.3

¶8 As an initial matter, respondent-mother contends that the trial court erred by

 determining that her parental rights in Arty were subject to termination. A

 termination of parental rights proceeding consists of an adjudicatory stage and a

 dispositional stage. N.C.G.S. §§ 7B-1109, -1110 (2019); In re Montgomery, 311 N.C.

 101, 110 (1984). At the adjudicatory stage, the petitioner bears the burden of proving

 by “clear, cogent, and convincing evidence” that one or more of the grounds for

 termination set out in N.C.G.S. § 7B-1111(a) exist. N.C.G.S. § 7B-1109(f). We review

 a trial court’s adjudication decision in order “to determine whether the findings are

 supported by clear, cogent and convincing evidence and the findings support the

 conclusions of law.” In re Montgomery, 311 N.C. at 111 (citing In re Moore, 306 N.C.

 394, 404 (1982)). “[A]n adjudication of any single ground in N.C.G.S. § 7B-1111(a) is

 2 Although the trial court terminated the parental rights of Arty’s father as well, he

 did not note an appeal from the trial court’s termination orders and is not a party to the
 proceedings before this Court.
 3 The notice of appeal that respondent-mother filed in this case was directed to the

 Court of Appeals rather than this Court. In view of the seriousness of the consequences of
 the trial court’s orders for both respondent-mother and Arty and the fact that neither DSS
 nor the guardian ad litem have objected to the sufficiency of respondent-mother’s notice of
 appeal, we elect to treat the record on appeal as a certiorari petition and allow that petition
 in order to reach the merits of respondent-mother’s challenge to the lawfulness of the trial
 court’s termination orders. Anderson v. Hollifield, 345 N.C. 480, 482 (1997).
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

 sufficient to support a termination of parental rights.” In re E.H.P., 372 N.C. 388,

 395 (2019).

¶9 A parent’s parental rights in a child are subject to termination pursuant to

 N.C.G.S. § 7B-1111(a)(1) in the event that the trial court concludes that the parent

 has neglected the juvenile within the meaning of N.C.G.S. § 7B-101. N.C.G.S. § 7B-

 1111(a)(1). A neglected juvenile is defined, in pertinent part, as a juvenile “whose

 parent, guardian, custodian, or caretaker does not provide proper care, supervision,

 or discipline; . . . or who lives in an environment injurious to the juvenile’s welfare.”

 N.C.G.S. § 7B-101(15) (2019). As we have recently explained,

 [t]ermination of parental rights based upon this statutory
 ground requires a showing of neglect at the time of the
 termination hearing or, if the child has been separated
 from the parent for a long period of time, there must be a
 showing of a likelihood of future neglect by the parent.
 When determining whether such future neglect is likely,
 the district court must consider evidence of changed
 circumstances occurring between the period of past neglect
 and the time of the termination hearing.

 In re R.L.D., 375 N.C. 838, 841 (2020) (cleaned up) (first quoting In re D.L.W., 368

 N.C. 835, 843 (2016); then quoting In re Z.V.A., 373 N.C. 207, 212 (2019).

¶ 10 In determining that respondent-mother’s parental rights in Arty were subject

 to termination on the basis of neglect, the trial court took judicial notice of the file in

 the underlying juvenile neglect and dependency proceeding and found that Arty had

 been adjudicated to be a neglected juvenile on 27 September 2018. In addition, the
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

trial court found that respondent-mother had agreed to a case plan on 19 September

2018 that required her to (1) attend and successfully complete an approved parenting

class; (2) complete a parenting psychological evaluation, a mental health evaluation,

a domestic violence assessment, and a substance abuse assessment and comply with

all treatment-related recommendations; (3) participate in a random drug screening

process; (4) communicate with DSS on a weekly basis; (5) maintain a legal and stable

source of income for a period of at least three months; and (6) obtain and maintain

stable housing for a period of at least three months. Although the trial court did find

that respondent-mother had made some progress toward satisfying the requirements

of her case plan, it also found, however:

 36. That [respondent-mother] stated to Dr. Schaeffer
 during her psychological evaluation that she had
 broken up with the father and that she didn’t
 understand why he was listed as an aggressor in a
 report.

 ....

 38. That [respondent-mother] appears to have “broken
 up” with the father at least three different times
 throughout the time [Arty] has been in the care of
 Stokes DSS.

 ....

 42. That [respondent-mother] did not appear concerned
 that the father had not completed any domestic
 violence counseling.

 ....
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

45. That although [respondent-mother] denie[d] drug
 use, the drug screens presented as Respondent’s
 Exhibit 2 still list that [respondent-mother] is
 diagnosed with severe opioid use disorder.

....

48. That [respondent-mother] began Mental Health
 services with The Neill Group two weeks after the
 Adjudication Hearing in this matter began on March
 13th, 2020.

49. That the Court has not heard any evidence regarding
 any additional Mental Health or Domestic Violence
 counseling since the last [incidents] of Domestic
 Violence.

....

54. That although [respondent-mother] states that she
 does not have a relationship with the father, it is
 extremely troubling to this Court that the mother is
 in continued contact with the father and is allowing
 visitation with her new baby.

....

56. That the Court finds that [respondent-mother] has
 genuine love and affection for [Arty], but that she does
 not appear to grasp the severity of the issues after all
 of the court hearings and all of the therapy that [she]
 has engaged in.

57. That [respondent-mother] minimizes her role in the
 issues leading up to today’s hearing and what she
 needs to do to prevent problems of the past.

58. That even during [respondent-mother’s] psychological
 evaluations the evaluators noted that [she]
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

 minimized issues and did not grasp why this was
 happening to her.

 59. That Dr. Bennett specifically stated in [respondent-
 mother’s] psychological evaluation that [respondent-
 mother] had minimized her mental health and
 substance abuse issues.

 ....

 65. That prior to March 13th, 2020, [respondent-mother]
 had missed approximately three months of visitation
 with [Arty].

 ....

 70. That the juvenile is a neglected juvenile, and that
 there is a reasonable likelihood of such neglect
 continuing in[to] the future. More specifically:

 ....

 b. [Respondent-mother] . . . ha[s] failed to show
 conditions were remedied since the time of
 removal of the juvenile and therefore it appears
 likely that such neglect would continue into the
 foreseeable future.

 “Findings of fact not challenged by respondent are deemed supported by competent

 evidence and are binding on appeal.” In re T.N.H., 372 N.C. 403, 407 (2019).

¶ 11 As an initial matter, we consider respondent-mother’s contention that many of

 the findings of fact contained in the trial court’s adjudication order should be

 disregarded because they are nothing more than recitations of the testimony provided

 by various witnesses. According to well-established North Carolina law,
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

 “[r]ecitations of the testimony of each witness do not constitute findings of fact by the

 trial judge.” In re N.D.A., 373 N.C. 71, 75 (2019) (alteration in original) (quoting

 Moore v. Moore, 160 N.C. App. 569, 571–72 (2003)). In In re N.D.A., the trial court

 found as a fact that the father had “testified that he had ‘attempted to set up visits

 with the child but could not get any assistance in doing so.’ ” Id. (emphasis added).

 On appeal, the father argued that the quoted language did not constitute a valid

 finding of fact because it contained nothing more than a recitation of his own

 testimony, a contention with which this Court agreed given that the language in

 question failed to determine whether the relevant portion of the father’s testimony

 was credible. Id. As a result, this Court disregarded the language in question in

 determining the validity of the trial court’s termination order. Id.

¶ 12 A careful review of the trial court’s adjudication order satisfies us that Finding

 of Fact Nos. 33, 35, 37, 39–41, 43–44, 46–47, 50–53, and 55 are nothing more than

 recitations of the testimony of various witnesses. Each of these findings states that

 a witness either “testified,” “contends,” or “indicated” that something was true. In

 light of the fact that, in the relevant findings of fact, the trial court simply recited the

 testimony of various witnesses rather than indicating what actually happened or

 describing a statement that might constitute an admission by a party or otherwise

 had relevance because that statement was actually made, these “findings” fail to

 satisfy the trial court’s obligation to evaluate the credibility of the witnesses who
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

 testified at the adjudication hearing and to resolve any contradictions that existed in

 the evidence. As a result, our precedent compels us to disregard these findings of fact

 in ascertaining whether the trial court did or did not err in determining that

 respondent-mother’s parental rights in Arty were subject to termination on the basis

 of neglect.

¶ 13 In addition to the findings of fact listed above, respondent-mother contends

 that Finding of Fact Nos. 54 and 59 should also be disregarded as mere recitations of

 witness testimony. However, we are not persuaded by respondent-mother’s

 contentions with respect to these findings of fact.

¶ 14 In Finding of Fact No. 54, the trial court stated that, “although [respondent-

 mother] states that she does not have a relationship with the father, it is extremely

 troubling to this Court that the mother is in continued contact with the father and is

 allowing visitation with her new baby.” Admittedly, the trial court did point out that

 respondent-mother had “state[d]” that she was no longer in a relationship with the

 father. In addition, however, the trial court determined in Finding of Fact No. 54 (1)

 that respondent-mother continued to have contact with the father and allowed him

 to have visitation with her new baby and (2) that her conduct in this regard was

 “extremely troubling” to the trial court. In our view, both of these statements

 constitute actual findings of fact rather than simple recitations of witness testimony.

 See In re Harris Teeter, LLC, 271 N.C. App. 589, 611 (stating that “[a] finding of fact
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

 is a ‘determination reached through logical reasoning from the evidentiary facts’ ”)

 (quoting Barnette v. Lowe’s Home Ctrs., Inc., 247 N.C. App. 1, 6 (2016))), cert. denied,

 376 N.C. 544 (2020), and aff’d on other grounds, 2021-NCSC-80. As a result, the

 information contained in Finding of Fact No. 54 relating to respondent-mother’s

 continued contact with Arty’s father, her decision to allow Arty’s father to visit with

 her new baby, and the trial court’s concern about her conduct is appropriately

 considered in determining whether respondent-mother’s testimony was credible and

 whether respondent-mother’s parental rights in Arty were subject to termination on

 the basis of neglect.

¶ 15 A careful reading of the trial court’s termination order persuades us that

 Finding of Fact No. 59 must be read in conjunction with Finding of Fact 58, which

 states “[t]hat[,] even during [respondent-mother’s] psychological evaluations[,] the

 evaluators noted that [respondent-mother] minimized issues and did not grasp why

 this was happening to her.” In stating in Finding of Fact No. 59 “[t]hat Dr. Bennett

 specifically stated in [respondent-mother’s] psychological evaluation that

 [respondent-mother] had minimized her mental health and substance abuse issues,”

 the trial court was simply pointing to the portion of the record that provided the

 evidentiary support for Finding of Fact No. 58. As a result, we decline to disregard

 the essential import of Finding of Fact Nos. 58 and 59, which is that respondent-
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

 mother tended to minimize the nature and extent of the difficulties that she faced in

 attempting to parent Arty.

¶ 16 In addition, respondent-mother attacks the validity of the finding in which the

 trial court judicially noticed the materials in the underlying neglect and dependency

 action and incorporated the “file and any findings of fact therefrom within the current

 order.” In support of this contention, respondent-mother points out that “[t]he trial

 court made broad, general statements of judicial notice and incorporation without

 specifying precisely what it was using for any specific finding” and argues that

 “[m]erely incorporating documents by reference is not a sufficient finding of fact.” We

 do not believe that the presence of this language in the trial court’s adjudication order

 constitutes prejudicial error.

¶ 17 As an initial matter, we note that respondent-mother did not object to the trial

 court’s decision to judicially notice the file in the underlying neglect and dependency

 proceeding. See In re A.B., 272 N.C. App. 13, 16 (2020) (stating that “[a] respondent’s

 failure to object to the trial court’s taking judicial notice of the underlying juvenile

 case files waives appellate review of the issue” (cleaned up) (quoting In re W.L.M.,

 181 N.C. App. 518, 522 (2007))). In addition, even if respondent-mother had properly

 preserved her objection to the trial court’s decision to judicially notice the materials

 in the underlying neglect and dependency proceeding for purposes of appellate

 review, her objection to the trial court’s action lacks substantive merit. As this Court
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

 has previously recognized, “[a] trial court may take judicial notice of findings of fact

 made in prior orders, even when those findings are based on a lower evidentiary

 standard because where a judge sits without a jury, the trial court is presumed to

 have disregarded any incompetent evidence and relied upon the competent evidence.”

 In re T.N.H., 372 N.C. at 410 (citing Munchak Corp. v. Caldwell, 301 N.C. 689, 694

 (1981)). On the other hand, however, “the trial court may not rely solely on prior

 court orders and reports” and must, instead, “receive some oral testimony at the

 hearing and make an independent determination regarding the evidence presented.”

 Id.

¶ 18 Although the trial court did take judicial notice of the record in the underlying

 neglect and dependency proceeding and incorporated “that file and any findings of

 fact therefrom within the [adjudication] order,” it did not rely solely upon these

 materials in determining that respondent-mother’s parental rights in Arty were

 subject to termination. Instead, the trial court also received oral testimony during

 the termination hearing from Katie Fulk, a social worker; respondent-mother; and

 Jodi Callahan, an addiction specialist employed by Novant Health, who counseled

 respondent-mother regarding her substance abuse issues. In addition, the trial court

 made independent factual determinations based upon the evidence admitted at the

 termination hearing that adequately addressed the matters at issue between the

 parties. As a result, since the trial court received evidence in the form of oral witness
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

 testimony at the adjudication hearing, fully considered this evidence, and made

 findings of fact delineating its independent evaluation of the record evidence in its

 adjudication order, we conclude that respondent-mother’s challenge to the trial

 court’s decision to take judicial notice of the record developed in the underlying

 neglect and dependency proceeding lacks merit.

¶ 19 Next, respondent-mother challenges the appropriateness of Finding of Fact

 Nos. 36 and 38 on the grounds that they lack “a nexus, an anchor in time, or relevance

 as support for a conclusion on the existence of any ground at the time of the hearing.”

 According to respondent-mother, in light of the trial court’s failure to “articulat[e] the

 connection between a finding and a ground, many [of its] findings are simply

 statements with no support for a ground for termination.” Once again, we fail to find

 respondent-mother’s argument to be persuasive.

¶ 20 As an initial matter, we hold that both of the challenged findings of fact have

 ample evidentiary support. In Finding of Fact No. 36, the trial court stated that

 respondent-mother had told “Dr. Schaeffer during her psychological evaluation that

 she had broken up with the father and that she didn’t understand why he was listed

 as an aggressor in a report.” As the record reflects, respondent-mother acknowledged

 that DSS had expressed concern about her relationship with Arty’s father and that

 she had told Dr. Schaeffer that Arty’s father had a “bad temper” before stating that

 she did not “know why” Arty’s father had been described as an “aggressor” in various
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

 reports. In Finding of Fact No. 38, the trial court found that respondent-mother

 “appears to have ‘broken up’ with the father at least three different times throughout

 the time the juvenile has been in” DSS care. According to the record, respondent-

 mother testified that she had “broke[n] up” with Arty’s father right after Christmas

 in 2019, after previously having ended her relationship with him one year earlier. In

 addition, the record reflects that respondent-mother admitted that, in April 2019,

 Arty’s father had intimidated her; that she had locked herself in a bathroom in

 response to his conduct; and that, after she had done so, Arty’s father broke down the

 door and forced his way into the bathroom, causing her to obtain the entry of a

 domestic violence protective order against him. As a result, the relevant findings of

 fact are supported by clear, cogent, and convincing record evidence and appear to us

 to have been relevant to the issue of whether respondent-mother’s parental rights in

 Arty were subject to termination on the basis of neglect given that they demonstrated

 the continued existence of contact between respondent-mother and Arty’s father

 despite his abusive behavior, a fact that tends to show her failure to understand and

 to address the issue of domestic violence.

¶ 21 Similarly, respondent-mother challenges a number of other findings as lacking

 in sufficient record support. First, respondent-mother argues that the record fails to

 provide sufficient support for Finding of Fact No. 42, in which the trial court found

 that respondent-mother “did not appear concerned that the father had not completed
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

any domestic violence counselling.” The record contains ample support for an

assertion that respondent-mother and Arty’s father had a history of domestic

violence. At the termination hearing, respondent-mother testified that, during the

first year of her relationship with Arty’s father and while she was pregnant with Arty,

she “started noticing that he might have like some anger issues, . . . but I stayed with

him in a chance to make our family work. He’s gotten worse over the time.” In

addition, as we have already noted, respondent-mother had reported an incident of

domestic violence between herself and Arty’s father that had occurred in April 2019

and that had (1) caused Arty’s father to go on “a three-day high, which led to his being

violent” and had (2) motivated respondent-mother to obtain the entry of a domestic

violence protective order directed against Arty’s father. In spite of this history of

domestic violence, however, respondent-mother subsequently reconciled with Arty’s

father. At a permanency-planning hearing held on 10 October 2019, respondent-

mother reported that she had established housing with Arty’s father in Winston-

Salem. In addition, respondent-mother acknowledged at the termination hearing

that she continued to allow the father to visit with her new baby. When asked at the

termination hearing whether, as a victim of domestic violence, she had concerns

about the fact that Arty’s father was having visits with her child, respondent-mother

testified that her “only concern” was Arty’s father’s “substance abuse problems.” As

a result, the record contains ample support for Finding of Fact No. 42. See In re
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

 D.L.W., 368 N.C. at 843 (stating that the trial judge is required to consider all of the

 evidence, to pass upon the credibility of the witnesses, and to determine the

 reasonable inferences to be drawn from the evidence).

¶ 22 In addition, respondent-mother challenges the sufficiency of the record support

 for Finding of Fact No. 45, which states that, “although [respondent-mother] denies

 drug use, the drug screens presented as Respondent’s Exhibit 2 still list that the

 mother is diagnosed with severe opioid use disorder.” In support of this contention,

 respondent-mother states that, since her drug screen results demonstrate that she

 had not engaged in improper drug use since July 2018, the fact that the drug screen

 summaries that were admitted into evidence at the termination hearing continued to

 “list” a diagnosis of severe opioid use disorder constitutes a misrepresentation of the

 evidence by implying that she has a new or ongoing substance abuse or disorder.

¶ 23 As the trial court’s findings reflect, the drug screen summaries indicate that,

 throughout the relevant period of time, respondent-mother was diagnosed as having

 an “[o]pioid use disorder, severe.” For that reason, the specific finding that the trial

 court actually made has sufficient evidentiary support. In re D.L.W., 368 N.C. at 843.

 On the other hand, given the absence of any evidence tending to show what, if

 anything, the continued existence of this diagnosis reflects and what was necessary

 in order for this diagnosis to be deleted and the absence of any findings that

 respondent-mother had tested positive for the presence of unlawful drugs or exhibited
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

 a consistent pattern of attempting to evade the required drug screening process in

 the period of time immediately prior to the termination hearing, we opt to refrain

 from considering Finding of Fact No. 45 in determining whether the trial court’s

 findings support its conclusion that respondent-mother’s parental rights in Arty were

 subject to termination on the basis of neglect. See In re N.G., 374 N.C. 891, 900

 (stating that this Court limits its review of findings of fact “to those challenged

 findings that are necessary to support the trial court’s determination . . . that parental

 rights should be terminated”).

¶ 24 Next, respondent-mother challenges the sufficiency of the record support for

 Finding of Fact No. 49, which states that “the Court has not heard any evidence

 regarding any additional Mental Health or Domestic Violence counseling since the

 last [incidents] of Domestic Violence.” Although respondent-mother testified at the

 termination hearing that the last incident of domestic violence in which she was

 involved with Arty’s father had occurred in April 2019, she also claims that, after this

 date, she had continued to participate in substance abuse counseling at Novant

 Health, had attended mental health treatment at Novant Health and the Neill Group,

 and had participated in group sessions that were intended to address domestic

 violence concerns. A careful review of the record satisfies us that respondent-mother

 did, in fact, receive mental health counseling at Novant Health after April 2019, with

 the Novant Health records that were admitted into evidence as Respondent’s Exhibit
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

 2 tending to show that respondent-mother saw a physician for treatment of major

 depressive disorder and panic disorder on 16 May 2019 and that she saw a provider

 at Novant Health for “[d]epression affecting pregnancy” on 3 October 2019. In

 addition, DSS concedes that respondent-mother sought domestic violence counseling

 after April 2019 given that the record contains a certificate of participation dated 9

 October 2019 that shows that respondent-mother completed a domestic violence

 support group.4 As a result, we will disregard Finding of Fact No. 49 in evaluating

 the lawfulness of the trial court’s determination that respondent-mother’s parental

 rights in Arty were subject to termination on the basis of neglect. In re S.M., 375

 N.C. 673, 684 (2020).

¶ 25 Moreover, respondent-mother argues that Finding of Fact Nos. 57 through 59,

 which indicate that respondent-mother failed to “grasp” and tended to minimize the

 extent of her involvement in the difficulties that precluded her reunification with

 Arty, lack sufficient record support. Respondent-mother’s argument to the contrary

 notwithstanding, however, the record reflects that Dr. Bennett specifically stated in

 his report that respondent-mother “minimized emotional and psychiatric issues”;

 4 DSS contends that, “given that the parents reconciled and separated again by
 December of 2019, it is not beyond imagining that further instances of domestic violence
 likely occurred around that time.” Although the trial court does have the right to make
 reasonable inferences from the evidence, “[s]uch inferences, however, ‘cannot rest on
 conjecture or surmise.’ ” In re K.L.T., 374 N.C. 826, 843 (2020) (quoting Sowers v. Marley,
 235 N.C. 607, 609 (1952)). The inference that DSS seeks to have us draw from the parents’
 reconciliation and subsequent separation does not strike us as a reasonable one.
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

 that this tendency to minimize the problems that respondent-mother faced

 “extend[ed] to the potential for domestic violence as she does not appear to

 understand that the [April 2019] incident . . . would be considered domestic violence”;

 and that respondent-mother tended to minimize her substance abuse problems.

 Although respondent-mother points out that Dr. Bennett’s report was the only

 evidence upon which these findings could possibly rest, the report in question

 provides ample support for the challenged portions of Finding of Fact Nos. 57 through

 59, with it being the province of the trial court to evaluate the credibility of the

 evidence and to determine the reasonableness of the inferences that should be drawn

 from that evidence. In re D.L.W., 368 N.C. at 843. Thus, we reject this aspect of

 respondent-mother’s challenge to the lawfulness of the trial court’s order.

¶ 26 Furthermore, respondent-mother contends that Finding of Fact No. 65, in

 which the trial court stated that, “[p]rior to March 13th 2020, [respondent-mother]

 had missed approximately three months of visitation with [Arty],” fails “to account

 for those reasonable and excusable justifications consistent with the missed visits.”

 Respondent-mother does not, however, argue that she did not miss the visits in

 question. In addition, the trial court has the authority, in the exercise of its

 responsibility as the finder of fact, to refrain from accepting any justifications or

 explanations that respondent-mother offered for missing these visits. See In re

 J.T.C., 273 N.C App. 66, 70 (2020) (stating that “[i]t is well-established . . . that
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

 ‘[c]redibility, contradictions, and discrepancies in the evidence are matters to be

 resolved by the trier of fact, here the trial judge, and the trier of fact may accept or

 reject the testimony of any witness’ ” (second alteration in original) (quoting Smith v.

 Smith, 89 N.C. App. 232, 235 (1988)), aff’d per curiam, 376 N.C. 642 (2021). As a

 result, the trial court did not commit any error of law in making Finding of Fact No.

 65.

¶ 27 In Finding of Fact No. 71, the trial court stated that the allegations set out in

 the termination motion had “been proven by clear, cogent, and convincing evidence.”

 Although respondent-mother appears to contend that the trial court erred by making

 Finding of Fact No. 71 on the grounds that this finding involves an erroneous

 application of the legal principles governing the issue of judicial notice, the challenged

 finding of fact is nothing more than a statement of the applicable standard of proof.

 See N.C.G.S. § 7B-1109(f) (providing that, at the adjudicatory portion of a termination

 of parental rights proceeding, “[t]he burden . . . shall be upon the petitioner or movant

 and all findings of fact shall be based on clear, cogent, and convincing evidence”); see

 also In re B.L.H., 376 N.C. 118, 127 (2020) (holding that, while the trial court failed

 to state the required standard of proof in the written termination order, its oral

 statement that its findings rested upon “clear, cogent, and convincing” evidence

 satisfied the requirements of N.C.G.S. § 7B-1109(f)).
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

¶ 28 Similarly, in Finding of Fact No. 72, the trial court stated that “any additional

 allegations of the Motion for Termination of Parental Rights not specifically laid out

 [in its previous findings were incorporated into its adjudicatory order] as Findings of

 Fact.” According to respondent-mother, the trial court erred by making this finding

 of fact on the theory that the trial court is required to find the facts specifically rather

 than simply incorporating a large body of findings from some other document by

 reference and on the grounds that a trial court cannot make adequate findings of fact

 by simply reciting the allegations set out in a termination motion. See In re Harton,

 156 N.C. App. 655, 660 (2003) (stating that, “[w]hen a trial court is required to make

 findings of fact, it must make the findings of fact specially” and, instead of “simply

 recit[ing] allegations,” “must through processes of logical reasoning from the

 evidentiary facts find the ultimate facts essential to support the conclusions of law”

 (cleaned up) (first quoting N.C.G.S. § 1A-1, Rule 52(a)(1) (2001); then quoting In re

 Anderson, 151 N.C. App. 94, 96 (2002))). We do not find respondent-mother’s

 argument to be persuasive.

¶ 29 As this Court has previously stated, “[t]he requirement for appropriately

 detailed findings is . . . not a mere formality or a rule of empty ritual; it is designed

 instead ‘to dispose of the issues raised by the pleadings and to allow the appellate

 courts to perform their proper function in the judicial system.’ ” Coble v. Coble, 300

 N.C. 708, 712 (1980) (quoting Montgomery v. Montgomery, 32 N.C. App. 154, 158
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

(1977)). A careful review of the trial court’s adjudication order reveals that, rather

than simply reciting the allegations set out in the termination motion, the trial court

made “sufficient additional findings of fact which indicate the trial court considered

the evidence presented at the hearing,” In re S.C.R., 217 N.C. App. 166, 169 (2011)

(quoting In re O.W., 164 N.C. App. 699, 702 (2004)), with this case being readily

distinguishable from In re S.C.R., in which the trial court erroneously made only “one

additional finding of fact beyond those incorporated from the petition,” resulting in

the entry of an order that was, as the Court of Appeals determined, insufficient to

permit a “determin[ation] that the judgment is adequately supported by competent

evidence.” Id. at 170 (quoting Montgomery, 32 N.C. App. at 156–57). Instead, the

trial court made over seventy findings of fact in the adjudication order that is at issue

in this case. Even though, as we have already noted, a number of the trial court’s

findings were deficient for various reasons, the remaining findings are sufficient to

permit meaningful appellate review. Cf. In re K.R.C., 374 N.C. 849, 861 (2020)

(concluding that this Court was “simply unable to undertake meaningful appellate

review of the trial court’s decision based upon a series of evidentiary findings which

[were] untethered to any ultimate facts which undergird an adjudication pursuant to

N.C.G.S. § 7B-1111(a) or to any particularized conclusions of law which would

otherwise explain the trial court’s reasoning”). See also In re Z.D., 258 N.C. App. 441,

444 (2018) (stating that, in order for an appellate court to conduct a meaningful
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

 review, a “trial court must make specific findings of the ultimate facts established by

 the evidence, admissions and stipulations which are determinative of the questions

 involved in the action and essential to support the conclusions of law reached”

 (internal quotation marks omitted) (quoting Quick v. Quick, 305 N.C. 446, 452

 (1982))); In re A.B., 245 N.C. App. 35, 44–45 (2016) (stating that, “[a]lthough finding

 of fact 13 certainly includes some ‘unoriginal prose [,]’ . . . the trial court made 70

 findings of fact” and “referred to the allegations from DSS’s petitions by reference to

 subparagraphs a-k in one of seventy findings, so it is clear that the trial court made

 an independent determination of the facts and did ‘more’ than merely ‘recit[e] the

 allegations’ ” (second and fourth alterations in original) (quoting In re O.W., 164 N.C.

 App. at 702)). As a result, we reject respondent-mother’s contention that the trial

 court erred by incorporating the allegations set out in the termination motion in its

 termination order.

¶ 30 Next, respondent-mother argues that Finding of Fact No. 70(b), which states

 that respondent-mother had “failed to show conditions were remedied since the time

 of removal of the juvenile and therefore it appears likely that such neglect would

 continue into the foreseeable future” improperly shifted the burden of proof from DSS

 to respondent-mother by requiring her to “show conditions” had been “remedied”

 since Arty had been removed from her home. Although respondent-mother is

 certainly correct in noting that the burden of proof at the adjudication stage of a
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

termination of parental rights proceeding rests upon the petitioner or movant, see

N.C.G.S. § 7B-1109(f) (stating that “[t]he burden in [an adjudicatory hearing on

termination] shall be upon the petitioner or movant and all findings of fact shall be

based on clear, cogent, and convincing evidence”), we do not believe that Finding of

Fact No. 70(b) indicates that the trial court impermissibly shifted the burden of proof

from DSS to respondent-mother. Instead, we conclude that, “[w]hen viewed in the

context of the entire termination order, the trial court’s finding is merely an

expression of its observation that respondent-mother failed to rebut petitioners’ clear,

cogent, and convincing evidence that the conditions of [removal had not been

remedied],” In re D.L.A.D., 375 N.C. 565, 570 (2020); see also In re A.R.A., 373 N.C.

190, 196 (2019) (stating that “the district court did not improperly shift DSS’ burden

of proof onto respondent-mother” and had, instead, “simply observed that respondent-

mother had failed to rebut DSS’ clear, cogent, and convincing evidence that she and

the father had not established safe and stable housing for the children”), when viewed

in light of its earlier determinations that respondent-mother failed to fully grasp the

extent of her mental health problems and the difficulties created by her continued

relationship with Arty’s father.5 As a result, we hold that this aspect of respondent-

mother’s challenge to the trial court’s adjudication order has no merit.

 5 Although respondent-mother challenges the lawfulness of Finding of Fact Nos. 41,

60, 61, and 68 as well, we need not address the arguments that she advanced in support of
her contention that the trial court erred by making these findings on the grounds that the
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

¶ 31 Finally, respondent-mother asserts that the record evidence and the trial

 court’s findings of fact fail to support its determination that it was likely that Arty

 would be neglected in the event that he was returned to respondent-mother’s care.

 We are unable to agree with respondent-mother’s contention.

¶ 32 As we have already noted, the trial court erred by making a number of findings

 of fact that constituted nothing more than recitations of the testimony of various

 witnesses and by finding, in the absence of sufficient record support, that the record

 did not contain any indication that respondent-mother had participated in any

 mental health or domestic violence treatment after the April 2019 incident in which

 Arty’s father committed acts of domestic violence against her. However, “[t]here is

 nothing impermissible about describing testimony, so long as the court ultimately

 makes its own findings, resolving any material disputes,” In re T.N.H., 372 N.C. at

 408 (quoting In re C.L.C., 171 N.C. App. 438, 446 (2005), aff’d per curiam, in part,

 and disc. rev. improvidently allowed, in part, 360 N.C. 475 (2006)), and this Court

 simply disregards information contained in findings of fact that lack sufficient

 evidentiary support in determining whether the trial court’s findings of fact support

 a determination that a parent’s parental rights in a child are subject to termination.

 As a result, we will now examine the sufficiency of the trial court’s properly made and

 findings in question are not necessary to support a conclusion that the trial court’s findings
 support its conclusion that respondent-mother’s parental rights were subject to termination
 on the basis of neglect. See In re N.G., 374 N.C. at 900.
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

 supported findings of fact for the purpose of ascertaining whether they support a

 determination that respondent-mother’s parental rights in Arty were subject to

 termination on the basis of neglect, including whether those findings sufficed to show

 a likelihood of future neglect in the event that Arty was to be returned to respondent-

 mother’s care.

¶ 33 A careful review of the trial court’s valid findings of fact establishes that, while

 respondent-mother made some progress in satisfying the requirements of her case

 plan, the progress that she did make was extremely limited; that respondent-mother

 had “broken up” with the father on at least three occasions during the pendency of

 the underlying neglect and dependency proceeding; that, in spite of her denial that

 she was still involved in a romantic relationship with Arty’s father, respondent-

 mother continued to have contact with Arty’s father and allowed him to visit her new

 baby; that respondent-mother was not concerned by the fact that Arty’s father had

 failed to complete domestic violence counseling; that, in spite of the fact that

 respondent-mother had genuine love and affection for Arty, she did not grasp the

 severity of the difficulties that she faced in seeking to be reunited with him; that

 respondent-mother minimized the problems that she faced and the significance of the

 steps that she needed to take in order to prevent these past difficulties from recurring;

 that respondent-mother was completely dependent upon others for her housing and

 finances; that respondent-mother had never had stable housing or independent
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

 means of support during the pendency of the underlying neglect and dependency

 proceeding; that respondent-mother missed approximately three months of visitation

 with Arty; and that respondent-mother had failed to provide any financial support

 for Arty during the time that he was in DSS custody. In addition, the trial court

 found that Arty had been adjudicated to be a neglected juvenile in 2018; that

 respondent-mother had failed to show that the conditions that had led to Arty’s

 removal from her care had been remedied; and that there was a likelihood that the

 neglect that Arty had experienced would recur in the event that he was returned to

 respondent-mother’s care.

¶ 34 The trial court’s properly made findings indicate that Arty had previously been

 found to be a neglected juvenile. In addition, by finding as a fact that respondent-

 mother had made some progress toward satisfying the requirements of her case plan

 by submitting to psychological evaluations, completing parenting classes, obtaining

 a domestic violence assessment and completing domestic violence classes,

 maintaining some level of contact with DSS, participating in substance abuse

 treatment, participating in a number of drug screens, and submitting to a mental

 health evaluation, it is apparent that the trial court considered whether respondent-

 mother’s situation had improved between the date upon which Arty entered DSS

 custody and the date of the termination hearing. In re Z.V.A., 373 N.C. at 212. On

 the other hand, the trial court also found that future neglect was likely in the event
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

that Arty was returned to respondent-mother’s care. In reaching this conclusion, the

trial court focused upon the fact that respondent-mother minimized the severity of

her parenting-related problems and the extent to which her parenting deficiencies

had contributed to Arty’s removal from her care, with the trial court having expressed

particular concern about the fact that respondent-mother continued to have contact

with Arty’s father, had reconciled with him on more than one occasion, and was

allowing him to visit her new child in spite of his prior history of committing acts of

domestic violence against her. See In re M.C., 374 N.C. 882, 889 (2020) (concluding

that “respondent’s refusal to acknowledge the effect of domestic violence on the

children and her inability to sever her relationship with [the father], . . . supports the

trial court’s determination that the neglect of the children would likely be repeated if

they were returned to respondent’s care”); see also In re M.A., 374 N.C. 865, 870 (2020)

(holding that, even though the father claimed to have made reasonable progress

toward satisfying the requirements of his case plan, the trial court’s findings relating

to his failure to adequately address the issue of domestic violence, which had been

the primary reason for the children’s removal from the family home, sufficed,

“standing alone, . . . to support a determination that there was a likelihood of future

neglect”); In re J.A.M., 259 N.C. App. 810, 816 (2018) (holding that, where domestic

violence was one of the grounds for the child’s removal from the parental home, the

mother’s denial that she needed help and her continued involvement with the father,
 IN RE: A.C.

 2021-NCSC-91

 Opinion of the Court

 who had committed acts of domestic violence against her, “constitute[d] evidence that

 the trial court could find was predictive of future neglect”). As a result, the trial court

 did not err by determining that there was a likelihood that the neglect that Arty had

 previously experienced would be repeated in the event that he was returned to

 respondent-mother’s care and by concluding that respondent-mother’s parental

 rights in Arty were subject to termination based upon neglect pursuant to N.C.G.S. §

 7B-1111(a)(1).

¶ 35 A trial court’s determination that a parent’s parental rights in a child are

 subject to termination for neglect pursuant to N.C.G.S. § 7B-1111(a)(1) is sufficient,

 in and of itself, to support the termination of that parent’s parental rights. In re

 E.H.P., 372 N.C. at 395. For that reason, we need not determine whether the trial

 court erred by determining that respondent-mother’s parental rights in Arty were

 subject to termination for willful failure to make reasonable progress toward

 correcting the conditions that had led to Arty’s placement in DSS custody, N.C.G.S.

 § 7B-1111(a)(2), or dependency, N.C.G.S. § 7B-1111(a)(6). In addition, we note that

 respondent-mother has not challenged the lawfulness of the trial court’s

 determination that the termination of her parental rights would be in Arty’s best

 interests. See N.C.G.S. § 7B-1110(a). As a result, for all of these reasons, we affirm

 the trial court’s orders terminating respondent-mother’s parental rights in Arty.

 AFFIRMED.