McCULLOUGH, Judge.
*582 Respondent, the father of D.T.N.A. (hereafter *644 "Danny"[1] ), appeals from an order terminating his parental rights on grounds (1) he is incapable of providing proper care and supervision such that the child is a dependent juvenile and lacks an appropriate alternative child care arrangement; and (2) during the six months immediately preceding the filing of the petition to terminate parental rights, he willfully abandoned Danny. Because the evidence and findings of fact do not support the *583 court's conclusions of law that these two grounds exist for termination of respondent's parental rights, which the appellee and the guardian ad litem candidly concede in their briefs, we reverse the order.
I. Procedural History
On 10 February 2014, Guilford County Department of Health and Human Services ("Petitioner") filed a juvenile petition seeking an adjudication that the infant Danny was a neglected and dependent juvenile. Petitioner took nonsecure custody of Danny on that date. On 9 April 2014, the court held a hearing and filed an order on 5 May 2014 adjudicating Danny to be a dependent juvenile and continuing custody with petitioner. The court found that Danny's mother was arrested on 7 February 2014 on charges of multiple criminal offenses in this state and South Carolina, including armed robbery. Respondent had pending charges in Guilford County of possession of marijuana and driving while impaired, and he was on probation.
The court thereafter conducted several review hearings. At a permanency planning and review hearing on 31 July 2015, the court changed the permanent plan from reunification to adoption with a concurrent plan of reunification. On 28 September 2015, petitioner filed a petition to terminate the parental rights of both parents. The court conducted a hearing on 19 January 2016 and filed an order on 22 February 2016 terminating the parental rights of both parents. Respondent filed notice of appeal on 23 March 2016.
II. Standard of Review
During the adjudication phase of a termination of parental rights proceeding, the trial court "examines the evidence and determines whether sufficient grounds exist under N.C. Gen. Stat. § 7B-1111 to warrant termination of parental rights." In re T.D.P. , 164 N.C.App. 287, 288, 595 S.E.2d 735, 736 (2004), aff'd per curiam, 359 N.C. 405, 610 S.E.2d 199 (2005). The focus is upon "whether the parent's individual conduct satisfies one or more of the statutory grounds which permit termination." In re J.S. , 182 N.C.App. 79, 86, 641 S.E.2d 395, 399 (2007). On appeal, our review is limited to a determination of whether the findings of fact are supported by clear, cogent and convincing evidence and whether the findings of fact support the adjudicatory conclusions of law. In re Shepard , 162 N.C.App. 215, 221, 591 S.E.2d 1, 6, disc. review denied sub nom. In re D.S., 358 N.C. 543, 599 S.E.2d 42 (2004). The conclusions of law are reviewable de novo . In re S.N., 194 N.C.App. 142, 146, 669 S.E.2d 55, 59 (2008), aff'd per curiam , 363 N.C. 368, 677 S.E.2d 455 (2009). We accordingly determine whether the court's findings of fact *584 support the court's conclusions of law that grounds existed to terminate respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(6), incapability of providing for proper care and supervision, and N.C. Gen. Stat. § 7B-1111(a)(7), willful abandonment.
III. Discussion
A. Incapability of Providing Proper Care and Supervision
We first address termination of respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(6) on the ground that he is incapable of providing for the proper care and supervision of Danny and the incapability will continue for the foreseeable future. N.C. Gen. Stat. § 7B-1111(a)(6) (2015). The incapability under this statute "may be the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement." Id. To terminate parental rights on this ground, the court's findings must address (1) the parent's ability to provide care or supervision, and (2) the availability to the *645 parent of alternative child care arrangements. In re P.M., 169 N.C.App. 423, 427, 610 S.E.2d 403, 406 (2005).
In finding of fact number 30, the trial court stated:
Within the meaning of N.C.G.S. § 7B-1111(a)(6), the father is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is dependent within the meaning of N.C.G.S. § 7B-101, there is reasonable probability that such incapability will continued [sic] for the foreseeable future and his incapability is due to conditions that render him unable to parent the juvenile because of his drug use, inability to care for [Danny's] daily needs, poor decision making that affected the well-being of his juvenile and lacks an appropriate alternative child care arrangement. [Respondent] has visited with [Danny], but the juvenile has been in care since he was two or three days old and now he is fast approaching his second birthday. [Respondent] has failed to comply with his case plan.
The court thus based its finding that respondent is incapable of providing proper care and supervision on four bases: (1) respondent's drug use; (2) his inability to care for Danny's daily needs; (3) his poor decision making; and (4) his failure to comply with the case plan. We examine each basis to determine whether it is supported by evidence and *585 whether it supports a conclusion that respondent is incapable of providing proper care and supervision. We also examine the finding that he lacks an appropriate alternative child care placement arrangement.
(1) Respondent's Drug Use. The court made only one finding of fact concerning respondent's usage of drugs, as follows:
23. [Respondent] admitted to the use of illegal substances and smoked "pot" as recently as New Year's Eve. Further, [respondent] refused to submit to drug testing by the Department of Health and Human Services and the Court considers these refusals as a positive drug screen. [Respondent] testified that he had to work and on November 10, 2015, when he was given the documents for the drug screen he said "It'll be good[.]"[ ] The Court considered this test positive because [respondent] failed to take the drug screen as no test results were received. [Respondent] admitted using marijuana on or about New Year's [E]ve.
Other than respondent's admission to smoking marijuana on the one occasion on New Year's Eve three weeks before the hearing, we can find no evidence in the record affirmatively showing that respondent engaged in substance abuse after the child was born. At best, the court's finding assumes, without basis, that by not taking a drug test, respondent would have tested positive for controlled substances. The record, however, tends to suggest otherwise. The preamble to the court's order terminating respondent's parental rights states that the court took judicial notice of the court file. Among other things, the court file contained permanency planning orders in which the court found as facts that respondent has had multiple drug screens as part of his criminal probation during the pendency of this matter, all of which have been negative. The court report prepared by petitioner for the permanency planning hearing on 18 November 2015 showed that since Danny has been in foster care, respondent has tested negative for all illegal substances, that the social worker had not asked respondent to undergo a drug screen for several months until 10 November 2015, and that respondent was on criminal probation until July 2015, during which time he never tested positive for any illegal substances.
Even if respondent had used drugs, the burden is upon the petitioner to show that the parent's substance abuse would prevent the parent from providing for the proper care and supervision of the child. In re A.G.M., 241 N.C.App. 426, 439, 773 S.E.2d 123, 133 (2015). A mere showing that a *586 parent has abused alcohol or drugs is insufficient to terminate parental rights. In re Phifer , 67 N.C.App. 16, 25, 312 S.E.2d 684, 689 (1984). We can find no evidence to indicate that respondent's alleged drug or substance abuse would prevent him from providing for the proper care and supervision of Danny. Petitioner thus has not satisfied this burden. *646 (2) Inability to provide for child's daily needs. Respondent challenges the court's finding number 20 in which the court found that "[respondent] knows how to care for [Danny] but could not demonstrate the techniques he learned through the Healthy Start Program on the juvenile. Further, [respondent] failed to pay attention to [Danny] and played video games instead of caring for his child."
The other findings made by the court, and the report of the lead caseworker for Healthy Start, contradict this finding. For example, in finding of fact number 18, the court narrates parenting issues or deficiencies but then notes that respondent rectified the issues or addressed the deficiencies when they were called to his attention. The report of the Healthy Start lead caseworker dated 27 April 2015 shows that respondent engages Danny during visits "with play, literacy and displays of affection," responds to cues from Danny, provides "appropriate redirection for unwanted behavior," and "demonstrate[s] an understanding of child milestones[,] often referencing the material presented during past sessions and with Fathers Matters [sic]." The caseworker noted "[t]here have not been any presented concerns during the supervised visits" and respondent "has maintained compliance with Healthy Start and will be transitioned to closing in May 2015 having completed his service goals with the program."
(3) Poor decision making. Respondent challenges finding of fact number 25 in which the court found respondent "made poor decisions regarding [Danny] and clearly chooses his girlfriend over his child." The finding does not specify the "poor decisions" made by respondent, and other findings made by the court do not demonstrate that respondent "clearly chooses his girlfriend over his child." The court found that respondent moved out of the home he shared with the girlfriend so he could have unsupervised visits with Danny. The court further found that although respondent did subsequently move back in with the girlfriend, respondent reported that after he moved out of the apartment someone shot at the windows and doors of the apartment, which suggests that the apartment was not located in a neighborhood that was safe for Danny.
(4) Non-compliance with case plan. Finding of fact number 16 shows that the case plan required respondent to obtain and maintain *587 stable employment, provide copies of his paycheck stubs and employment updates within 48 hours, obtain suitable and stable housing for a minimum of six months, complete a parenting assessment and follow the recommendations, attend all visits, participate in shared parenting, participate in Healthy Start services, participate in Fathers Matter Group, participate in "CC4C" when requested, and meet with the JCITI coordinator and attend all JCITI court reviews. Other findings show that respondent worked at a college two days per week earning $750 per month, supplemented by playing music, and that respondent stayed current in his child support obligation of $50.00 per month. Respondent cleaned his house, and relinquished his pit bull dogs, to make the home appropriate for the child. Respondent was permitted visits twice per week, which started in March 2015. Although he did miss eight visits between March and late July 2015, he attended the majority of them and he successfully completed the Healthy Start parenting program. Other than a finding that respondent failed to participate in "shared parenting," the court's findings do not indicate that respondent failed to comply with participation in CC4C, meetings with the JCITI coordinator, and attendance of JCITI reviews.
(5) Lack of Alternative Child Care Arrangement. In finding of fact number 27, the court found that respondent never offered another child care placement for Danny, other than himself and his girlfriend. This finding is contradicted by the case file, which showed respondent had recommended a cousin for placement, that a home study was conducted and placement with this relative was recommended by petitioner, and that the court approved this placement on 28 February 2014. In addition, at the termination hearing the social worker testified that relatives were identified by respondent as a placement option, that a home study of these relatives was conducted, and that *647 placement with the relatives was approved but that placement with this relative was not utilized because respondent believed it was better for Danny to remain in the current foster placement.
B. Willful Abandonment
One's parental rights may be terminated if the court determines that a parent "has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion" to terminate parental rights. N.C. Gen. Stat. § 7B-1111(a)(7) (2015). "Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child." In re Adoption of Searle , 82 N.C.App. 273, 275, 346 S.E.2d 511, 514 (1986). "[I]f a parent withholds his presence, *588 his love, his care, the opportunity to display filial affection, and wilfully neglects to lend support and maintenance, such parent ... abandons the child." Pratt v. Bishop, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962).
In finding of fact number 32, the court found
Within the meaning of N.C.G.S. § 7B-1111(a)(7), during the six months immediately preceding the filing of the Petition to Terminate the Parental Rights, that is, from March 28, 2015 to September 28, 2015, [Respondent] has willfully abandoned the juvenile in that the father has failed to provide a plan for [Danny] and comply with his case plan.
As with finding of fact number 30, the finding that respondent failed to provide a case plan and comply with it is directly contradicted by the court's other findings of fact which we have discussed above and is not supported by evidence. The court's findings of fact show that respondent did enter into a case plan and that he substantially complied with the case plan.
We further conclude that the court's findings of fact do not support the conclusion of law that respondent has willfully abandoned the child. The court's findings demonstrate that respondent is current in his child support obligation, regularly visits the child and interacts with him, attends parenting classes to become a better parent to the child, and participates in the child's medical appointments. These findings do not portray a parent who "manifests a willful determination to forego all parental duties and relinquish all parental claims to the child[ ]" or "withholds his presence, his love, his care, [and] the opportunity to display filial affection, and willfully neglects to provide support and maintenance[ ]" within the accepted definitions of abandonment.
The order terminating respondent's parental rights is accordingly reversed and the matter is remanded to Guilford County District Court for further proceedings.
REVERSED AND REMANDED.
Judges BRYANT and TYSON concur.

A pseudonym is used to protect the identity of the juvenile and for ease of reading.