An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority.  Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-476

Filed 18 March 2026

Caldwell County, No. 22JT000095-130

IN THE MATTER OF: Z.G.

Appeal by Respondent-Mother from order entered 18 February 2025 by Judge Mark L. Killian in Caldwell County District Court.  Heard in the Court of Appeals 20 February 2026.

> *Attorney Stephen M. Schoeberle, for the petitioner-appellee Caldwell County Department of Social Services.*

> *McGuireWoods LLP, by Attorney Ami P. Patel, for the appellee Guardian ad Litem.*

> *Reeves Divenere & Wright, by Attorney Anné C. Wright, for the respondent-appellant mother.*

STADING, Judge.

Respondent-Mother ("Mother") appeals from the trial court's order that terminated her parental rights to her minor daughter, Z.G. ("Zora"),[1] on the grounds of neglect, willfully leaving her in foster care or placement outside the home for more

---

[1] We use pseudonyms to protect the identities of the minor children.  N.C. R. App. P. 42(b) ("Appeals filed under N.C. [Gen. Stat.] § 7B-1001 . . . must use initials or a pseudonym instead of the minor's name.").

than twelve months without making reasonable progress, and dependency. On appeal, Mother maintains the trial court committed error by determining that her parental rights were subject to termination under N.C. Gen. Stat. § 7B-1111(a)(1)–(2), (6) (2023). She also maintains that several findings of fact are not supported by clear, cogent, and convincing evidence. After careful consideration, we affirm the trial court's order.

## I. Background

On 21 July 2022, the Caldwell County Department of Social Services ("DSS") filed a juvenile petition, alleging Mother had neglected Zora. The petition maintained Mother failed to provide proper care, supervision or discipline; it also alleged Mother created or allowed to be created "a living environment that is injurious to the juvenile's welfare."

The petition alleged that since Zora's birth, DSS had been intermittently involved with Mother and Zora due to Mother's ongoing substance abuse. On 24 May 2022, law enforcement found Mother unresponsive, sitting behind the wheel of her car, while Zora was in the back seat. Officers found three prescription drugs in an unmarked container in the vehicle. Mother did not have a prescription for any of the medications. Officers also found a red straw, tin foil, and a plastic bag with residue which tested positive for methamphetamines. Mother had failed sobriety tests and was charged with misdemeanor child abuse, driving while impaired, driving while license revoked, misdemeanor possession of a Schedule V controlled substance, and

misdemeanor possession marijuana paraphernalia. Between 24 May 2022 and the filing of the petition, Mother had been "evasive, hostile, and uncooperative with [DSS] to develop a plan to ensure the juvenile's safety," and she had not engaged in services to correct the deficiencies which created the injurious environment.

The trial court entered an order granting nonsecure custody of Zora to DSS on 27 July 2022. After a hearing on 18 and 19 October 2022, the trial court entered an order on 3 November 2022 adjudicating Zora neglected "due to [an] injurious environment as a result of [Mother's] substance use resulting in treatment by emergency services while being the sole caregiver of the juvenile." The trial court entered a disposition order on the same day and approved Zora's placement with her paternal grandfather. The trial court ordered Mother to comply with her case plan as follows: execute a consent for release of information form to allow DSS to exchange and obtain information with all service providers; complete random, unannounced drugs screenings as requested by DSS; participate in all visits with DSS when requested and maintain contact; obtain and maintain safe and appropriate housing, provide notification to DSS of any changes in residence; obtain a substance abuse assessment and follow any and all recommendations; complete a parenting program; and, obtain and maintain gainful and verifiable employment. The court authorized Mother to have supervised visitation with Zora for one hour every week with a chance for increased visitation upon completion of consecutive negative drug screens.

The trial court conducted five permanency planning hearings to evaluate Mother's progress between 2023 and 2024. The trial court held the first permanency planning hearing in January 2023 and found that Mother submitted to one drug screen but it "was heavily diluted." Mother also missed multiple visits with Zora, and the visits that she did attend "did not go well[.]" At this time, reunification was established as the primary plan, with a secondary plan of adoption.

After the second permanency planning hearing in May 2023, the court found that Mother was pursuing employment and participating in parenting classes. However, Mother was not participating in mental health services. Mother also missed two parenting classes and failed to submit to any drug screens. At this time, the primary plan remained reunification, as did the secondary plan of adoption.

After the third permanency planning hearing in October 2023, the trial court found that Mother had "made minimal effort to consistently address the issues that brought the juvenile into custody of the Department and ha[d] not made any progress with her case plan." The primary and secondary plans remained unchanged.

The fourth permanency planning hearing was held in December 2023. In the resulting order, the trial court found: DSS could not verify that Mother had attended any substance abuse or mental health treatment, or had obtained employment; Mother had not completed a parenting program; and Mother had been discharged from RHA Health Services, a behavioral health program that addresses mental health and substance abuse, due to noncompliance with attendance. The trial court

also found that although DSS had attempted to obtain a drug screen from Mother five times, Mother failed to respond and comply. The primary plan changed to adoption and the secondary plan changed to reunification.

After the last permanency planning hearing in March 2024, the trial court found: Mother had made minimal efforts to consistently address the issues that brought the juvenile into DSS's custody and had not made any progress with her case plan. The primary and secondary plans therefore remained the same.

On 24 May 2024, DSS moved to terminate Mother's parental rights, alleging grounds existed for termination based on neglect, willful failure to make reasonable progress, and dependency. *See* N.C. Gen. Stat. § 7B-1111(a)(1)–(2), (6). After a hearing, the trial court terminated Mother's parental rights in an order entered on 18 February 2025. At the adjudicatory stage, the trial court concluded that all three of the alleged grounds were supported by clear, cogent, and convincing evidence. And at the dispositional stage, the trial court concluded that termination was in Zora's best interests under N.C. Gen. Stat. § 7B-1110 (2023). Mother timely appealed.

## II. Analysis

Mother makes several challenges to the trial court's findings of fact.[2] She asserts that a portion of Finding of Fact No. 16 is erroneous as a matter of law. She

---

[2] Mother also challenges several findings rendered in support of the adjudication grounds of dependency and willful failure to make reasonable progress. However, since we conclude the trial court properly rendered findings in support of the ground of neglect, and that those findings support its conclusion, we decline to consider these additional challenges.

also asserts that portions of Findings of Fact Nos. 16 and 18 are unsupported by clear, cogent, and convincing evidence. Mother further challenges the trial court's adjudication of grounds to terminate her parental rights to Zora. To that end, she maintains the trial court committed error because none of the three grounds it concluded to have existed were supported by the findings of fact.

## A. Standard of Review

"Our Juvenile Code provides for a two-step process for the termination of parental rights—an adjudication stage and a dispositional stage." *In re R.D.*, 376 N.C. 244, 248, 852 S.E.2d 117, 122 (2020); N.C. Gen. Stat. §§ 7B-1109 and 7B-1110 (2023). "At the adjudicatory stage, the petitioner bears the burden of proving by clear, cogent, and convincing evidence the existence of one or more grounds for termination under section 7B-1111(a) of the North Carolina General Statutes." *In re Z.L.W.*, 372 N.C. 432, 434, 831 S.E.2d 62, 64 (2019) (cleaned up).

We review a trial court's adjudication "to determine whether the findings are supported by clear, cogent, and convincing evidence and the findings support the conclusions of law." *In re T.N.H.*, 372 N.C. 403, 406, 831 S.E.2d 54, 58 (2019). "A trial court's finding of fact that is supported by clear, cogent, and convincing evidence is deemed conclusive even if the record contains evidence that would support a contrary finding." *In re R.G.L.*, 379 N.C. 452, 456, 866 S.E.2d 401, 408 (2021) (cleaned up). Additionally, unchallenged findings of fact are binding on appeal. *Koufman v. Koufman*, 330 N.C. 96, 97, 408 S.E.2d 729, 731 (1991). "The trial court's conclusions

of law are reviewable de novo on appeal." *In re C.B.C.*, 373 N.C. 16, 19, 832 S.E.2d 692, 695 (2019). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the [trial court]." *In re T.M.L.*, 377 N.C. 369, 375, 856 S.E.2d 787, 790 (2021) (cleaned up).

"[W]here the trial court finds multiple grounds on which to base a termination of parental rights, and an appellate court determines there is at least one ground to support a conclusion that parental rights should be terminated, it is unnecessary to address the remaining grounds." *In re P.L.P.*, 173 N.C. App. 1, 8, 618 S.E.2d 241, 246 (2005) (cleaned up); *In re E.H.P.*, 372 N.C. 388, 395, 831 S.E.2d 49, 53 (2019) (cleaned up) (noting "an adjudication of any single ground in N.C.G.S. § 7B-1111(a) is sufficient to support a termination of parental rights. Therefore, we need not address respondent's contention that the trial court erred in determining that grounds likewise existed to support termination based on willful failure to pay child support.").

## B. Findings of Fact Nos. 16 & 18

Mother contends Finding of Fact No. 16 is erroneous as a matter of law because the trial court made findings pertaining to current neglect, which is inapplicable with respect to "termination of parental rights in the instant case." Mother also asserts portions of Findings of Fact Nos. 16 and 18[3] are unsupported by clear, cogent, and

---

[3] Mother appears to challenge Finding of Fact No. 19 in her brief. However, the substance of Mother's challenge reveals this is a scrivener's error, as in substance, her challenge is to the portions of Findings of Fact Nos. 16 and 18 which state she was discharged from multiple facilities.

convincing evidence to the extent that they state Mother: failed to address her mental health issues; failed to make any significant changes in pursuing treatment to address her multiple health diagnoses; failed to comply with the recommendations of her treatment providers; routinely failed drug screens; and was discharged from multiple facilities due to noncompliance.

The relevant portions of Findings of Fact Nos. 16 and 18 provide:

> 16. . . . The juvenile has been adjudicated as a neglected juvenile within the meaning of 7B-101(15) and such neglect by Respondent Mother continues as of the date of filing of this Motion. Specifically, Respondent mother has failed to address her mental health issues; she has failed to maintain suitable, stable, full-time employment, and has willfully failed to provide verification of any employment to the Department. Respondent mother willfully fails to complete drug screens as requested by the Department. She routinely fails to answer the phone when asked to screen, or she provides reasons that are found to be not true. Despite referrals made, Respondent mother has completed no parenting classes. She has failed to comply with the recommendations of treatment providers to receive mental health treatment, completing multiple "assessments" but unable to articulate the treatment she underwent. She has failed to comply with recommended treatment, being discharged from multiple facilities due to noncompliance. She has failed to participate in treatment services or complete the elements of her case plan as ordered by the Court. She has failed to make any significant changs in pursuing treatment to address her multiple mental health diagnoses. . . .
>
> . . . .
>
> 18. . . . Respondent mother is incapable of providing for the proper care and supervision of the juvenile such that the juvenile is a neglected juvenile . . . and there is reasonable

> probability that such incapability will continue for the foreseeable future. Such incapability is the result of Respondent mother's diagnoses of Post—Traumatic Stress Disorder; Opioid Dependence, uncomplicated; and Cannabis Dependence Disorder. Respondent Mother has failed to address her mental health and substance issues or participate in ongoing treatment for such issues such that said issues remain untreated. The Department has largely been unable to ascertain the extent to which Respondent mother has treated her issues, if at all, due to lack of cooperation and communication. Respondent mother has not meaningfully completed any treatment program to address her substance use. Despite testifying that she has completed multiple "assessments", Respondent mother is unable to articulate what substance use treatment she has participated in, if any. Respondent mother has also failed to meaningfully address her mental health as evidenced by her sporadic and minimal participation in therapy services referred to her by the Department. She has been discharged from more than one facility for lack of compliance. . . .

Mother maintains it was error for the trial court to find that Zora's neglect "continue[d] as of the date of the filing of th[e] Motion" because the finding was made as "an attempt to find current neglect, which is not an applicable basis for termination in the instant case." She cites to *In re B.R.L.*, in which the Court explained, "[i]n some circumstances, the trial court may terminate a parent's rights based on neglect that is currently occurring at the time of the termination hearing." 379 N.C. 15, 21, 863 S.E.2d 763, 769 (2021). "However, in other instances, the fact that a child has not been in the custody of the parent for a significant period of time prior to the termination hearing would make requiring the petitioner in such circumstances to show that the child is currently neglected by the parent impossible." *Id.*

Mother is correct that—similar to *In re B.R.L.*—since Zora had not been in her care for over a year by the time of the hearing, the trial court's finding of current neglect is in error. *See In re D.L.W.*, 368 N.C. 835, 843, 788 S.E.2d 162, 167 (2016) ("Termination of parental rights based upon this statutory ground requires a showing of neglect at the time of the termination hearing or, if the child has been separated from the parent for a long period of time, there must be a showing of past neglect and a likelihood of future neglect by the parent."). Yet it appears the trial court's finding was made in attempt to adhere to its mandate established by our common law: "When determining whether such future neglect is likely, the district court *must consider* evidence of changed circumstances occurring between the period of past neglect and the time of the termination hearing." *In re R.L.D.*, 375 N.C. 838, 841, 851 S.E.2d 17, 20 (2020) (cleaned up). In any event, we disregard this challenged portion of Finding of Fact No. 16, as it appears erroneous on its face and is immaterial to the trial court's conclusion of neglect. *See In re N.G.*, 374 N.C. 891, 901, 845 S.E.2d 16, 24 (2020); *see also In re A.N.H.*, 381 N.C. 30, 42, 871 S.E.2d 792, 803 (2022).

Mother next challenges Findings of Fact Nos. 16 and 18 to the extent that they state she "failed to address her mental health issues," "failed to comply with recommended treatment," and was "discharged from multiple facilities due to noncompliance." In so doing, she claims that "[t]here was no evidence . . . regarding what treatment, if any, was recommended to [her] in regard to mental health." She

also claims the evidence only showed she was discharged from one facility as opposed to multiple.

At the termination hearing, Mother testified to seeing a therapist for mental health treatment at Living Waters. Mother stated she stopped seeing the therapist after a few months because the therapist kept recommending that she complete a "detox program," which Mother believed unnecessary. After four months, Mother was discharged from Living Waters for noncompliance. Although Mother's last comprehensive clinical assessment yielded no recommendations, a DSS social worker testified that Mother obtained this assessment on her own accord, without consulting DSS; the social worker expressed concern over the accuracy of this assessment, as Mother had refused to complete drug screens or communicate with DSS:

> Q. When it comes to the grounds for the termination when it comes to neglect, what -- you discussed her mental health treatment as well and those also came back with no recommendations; is that correct?
>
> A. On the last CCS that she completed?
>
> Q. On that last CCA.
>
> A. That recommendation did come back with no recommendations, but there was no conversation or no information shared with the provider at RHA with our concerns or to, you know, inform them of . . . the history that they may not have had. So it's like she went down to talk to probation and self-reported. So if she self-reported then and denied substance or mental health, then more likely they have to go on there's no recommendations because she's denying it.

. . . .

> [A.] I am concerned that she did not maintain contact with the social worker or the Department to let them know that, okay, I'm going to go to RHA to have this assessment. And just the lack of communication, just, you know, the whole concern with, you know, not doing the drug screens. That is a valid concern that she's not drug screening, that she is clean. And she has not had any treatment since Living Water to address these issues. So, yeah, that is a concern because she has a long-standing history of substance abuse and mental health.

And thereafter, the DSS social worker testified to meeting Mother in April 2024, when Mother stated she was getting mental health and substance abuse treatment at Carolina Wellness and Recovery. But when the social worker contacted the facility, she was informed that Mother "was not a client there." Finally, the record supports a finding that Mother was discharged from both Living Waters and a facility called RHA[4] for non-attendance, evidenced by the social worker's testimony and a prior permanency planning order. Accordingly, we hold the challenged portions of these findings are supported by clear, cogent, and convincing evidence. *In re R.G.L.*, 379 N.C. at 456, 866 S.E.2d at 408.

Mother next challenges the portion of Finding of Fact No. 16 which states: Mother "failed to comply with the recommendations of treatment providers to receive mental health treatment, completing multiple assessments but unable to articulate the treatment she underwent." Mother insists—by pointing to one page of the

---

[4] The record does not reveal the full name of this facility. It merely references it at as "RHA."

transcript—that she *was* able to "articulate" and describe treatment in which she participated at Living Waters. Yet in the portion of the transcript to which she directs this Court, Mother only identifies an approximate timeline and a specific professional with whom she "did some treatment" prior to discharge for lack of compliance after four months. Additionally, Mother's testimony at the hearing reveals that she could not articulate the specific treatment she underwent at RHA:

> Q. . . . You mentioned probably doing an assessment with RHA for substance use?
>
> A. Three of them.
>
> . . . .
>
> Q. Okay. If so you were just doing assessments [at RHA], you're not really explaining -- what kind of treatment have you participated in aside from assessing what treatment you need?
>
> A. The mental health.
>
> Q. For substance abuse specifically, what kind of treatment have you participated in that's not therapy?
>
> A. I mean me and Ms. Hernandez would speak about what caused the drug issues. Drugs were talked by -- addiction was talked about in those therapy. That has a lot -- the drug had a lot to do with things that I had been through -- the mental.

And as noted in the preceding paragraph, a DSS social worker testified that while meeting with Mother in April 2024, Mother reported receiving treatment from Carolina Wellness and Recovery. But when the social worker contacted the facility, they had no record of Mother's existence as a client. We thus overrule Mother's

argument on this basis, as it is unmeritorious. *See In re R.D.*, 376 N.C. 244, 258, 852 S.E.2d 117, 129 (2020) (cleaned up) (noting "findings of fact are binding where there is some evidence to support those findings, even though the evidence might sustain findings to the contrary").

Finally, Mother contends the portions of Findings of Fact Nos. 16 and 18 which state that she "fail[ed] to complete drug screens as requested" should be disregarded because she completed some drug screens. Although Mother completed *some* drug screens, the record demonstrates that Mother only complied with five drug screen requests out of forty-four. Mother further argues, with respect to the drug screens that she missed, she had to care for her sick mother who was at the hospital. But at the termination hearing, Mother testified that those doctor appointments only impeded her from complying with "one or two" drug screens. Otherwise, Mother testified to missing appointments as a result of "transportation issues" and not being home. Additionally, a social worker with DSS testified that Mother often failed to respond to texts or phone calls requesting drug screens. Regardless of Mother's alleged reasons for missing drug screens, these portions of the trial court's findings are supported by clear, cogent, and convincing evidence. *In re R.G.L.*, 379 N.C. at 456, 866 S.E.2d at 408; *In re R.D.*, 376 N.C. at 258, 852 S.E.2d at 129.

For the above reasons, the trial court erred by rendering a finding pertaining to Mother's current neglect of Zora; we therefore disregard only that portion of

Finding of Fact No. 16. Otherwise, the remaining contested portions of Findings of Fact Nos. 16 and 18 are supported by clear, cogent, and convincing evidence.

## C. Neglect

Mother next asserts the trial court erred by terminating her parental rights based on the ground of neglect. She maintains the trial court "made several findings of fact in regard to neglect, none of which are sufficient support for [its] conclusion that grounds had been proven by clear and convincing evidence that there was a high probability that [M]other would neglect Zora again if returned to her care."

N.C. Gen. Stat. § 7B-1111 provides the grounds upon which a trial court may terminate a parent's parental rights. Relevant here, under subsection 7B-1111(a)(1), "parental rights may be terminated if the trial court finds the parent has neglected his or her child such that the child is a neglected juvenile within the meaning of section 7B-101 of the North Carolina General Statutes." *In re Z.A.M.*, 374 N.C. 88, 95, 839 S.E.2d 792, 797 (2020) (cleaned up). A neglected juvenile is defined under Chapter 7B as "any juvenile less than 18 years of age . . . whose parent, guardian, custodian, or caretaker does any of the following":

> a. Does not provide proper care, supervision, or discipline.
>
> b. Has abandoned the juvenile, except where that juvenile is a safely surrendered infant as defined in this Subchapter.
>
> c. Has not provided or arranged for the provision of necessary medical or remedial care.

> d. Or whose parent, guardian, or custodian has refused to follow the recommendations of the Juvenile and Family Team made pursuant to Article 27A of this Chapter.
>
> e. Creates or allows to be created a living environment that is injurious to the juvenile's welfare.
>
> f. Has participated or attempted to participate in the unlawful transfer of custody of the juvenile under G.S.14-321.2.
>
> g. Has placed the juvenile for care or adoption in violation of law.

N.C. Gen. Stat. § 7B-101(15)(a)–(g) (2023) (citation modified).

Ordinarily, "termination of parental rights based upon this statutory ground requires a showing of neglect at the time of the termination hearing." *In re M.B.*, 382 N.C. 82, 86, 876 S.E.2d 260, 264 (2022) (citation modified). But "in instances where the child has been separated from the parent for a long period of time, there must be a showing of a likelihood of *future* neglect by the parent." *Id.* (cleaned up); *In re D.L.W.*, 368 N.C. at 843, 788 S.E.2d at 167 ("Termination of parental rights based upon this statutory ground requires a showing of neglect at the time of the termination hearing or, if the child has been separated from the parent for a long period of time, there must be a showing of past neglect and a likelihood of future neglect by the parent."). That is, "a trial court may terminate parental rights based upon prior neglect of the juvenile if the trial court *finds by clear and convincing evidence a probability of repetition of neglect* if the juvenile were returned to [his or] her parents." *In re M.B.*, 382 N.C. at 86, 876 S.E.2d at 264.

"When determining whether such future neglect is likely, the district court must consider evidence of changed circumstances occurring between the period of past neglect and the time of the termination hearing." *In re R.L.D.*, 375 N.C. at 841, 851 S.E.2d at 20 (cleaned up). "Likewise, a trial court may consider whether the parent has made any meaningful progress in eliminating the conditions that led to the removal of the children. When these factors evidence a likelihood of repetition of neglect, the trial court may reach a conclusion of neglect under [N.C.G.S.] § 7B-1111(a)(1)." *In re M.B.*, 382 N.C. at 86, 876 S.E.2d at 265 (cleaned up). That said,

> these are only *factors* within the trial court's ultimate determination of a likelihood of future neglect; noting the factors alone does not amount to making the determination itself. After noting these factors, the trial court must then distinctly determine a parent's likelihood of neglecting a child in the future. When the trial court fails to distinctly determine that there is a likelihood of future neglect, "the ground of neglect is unsupported by necessary findings of fact." *In re E.L.E.*, 243 N.C. App. at 308. Even when "competent evidence in the record exists to support such a finding, . . . the absence of this necessary finding [still] requires reversal." *Id.*

*Id.* at 86–87, 876 S.E.2d at 265 (cleaned up).

Here, the trial court concluded grounds existed to terminate Mother's parental rights for neglect based on its determination that Zora was previously adjudicated a neglected juvenile, and there was a strong possibility that such neglect would be repeated in the future if Zora was returned to Mother's care. The trial court ultimately found that Mother would likely neglect Zora in the future given that she

failed to make reasonable progress to her plan between the period of past neglect and

the time of the termination hearing:

> 11. On October 19, 2022, the juvenile was adjudicated to be neglected juvenile pursuant to N.C.G.S. § 7B-101(15). [Mother] appeared at the Adjudication hearing.
>
> 12. On October 19, 2022 the Disposition Order was entered. [Mother] was directed to undertake certain tasks which would assist her in meeting the needs of the juvenile for a safe and appropriate home.
>
> 13. [DSS] prepared an Out-of-Home Family Services Agreement for [Mother] and she originally agreed to the terms of this case plan on August 30, 2022. An updated case plan was entered into on March 30, 2023. Some of the activities included on her case plan are as follows: address her substance use and mental health issues; maintain appropriate housing, transportation, and employment; and comply and submit to random urine and hair follicle drug screens.
>
> 14. [Mother's] activities were also ordered by the court.
>
> 15. [Mother's] employment and living situations are currently unknown to [DSS]. When living in [the first location], [Mother] reported to do "private care", cleaning homes and providing caretaker services to people in her neighborhood. [Mother] never provided verifiable proof of income or employment to [DSS] and was unable to provide the names of clients. [Mother] testified that she would be starting a job at [a snack business] . . . but has yet to do so. Since moving to [a second location], [DSS] has been unable to access [Mother's] home. She reports that you have to call or honk the horn so that she knows to come out and open the gate; however, [DSS] has made multiple attempts to visit the home, none of which have been successful.
>
> 16. Grounds exist to terminate the parental rights of [Mother] pursuant to N.C.G.S. § 7B-1111(a)(1). The juvenile has been adjudicated as a neglected juvenile

within the meaning of [§] 7B-101(15) . . . . Specifically, [Mother] has failed to address her mental health issues; . . . . [Mother] willfully fails to complete drug screens as requested by [DSS]. She routinely fails to answer the phone when asked to screen, or she provides reasons that are found to be not true. Despite referrals made, [Mother] has completed no parenting classes. She has failed to comply with the recommendations of treatment providers to receive mental health treatment, completing multiple "assessments" but unable to articulate the treatment she underwent. She has failed to comply with recommended treatment, being discharged from multiple facilities due to noncompliance. She has failed to participate in treatment services or complete the elements of her case plan as ordered by the Court. She has failed to make any significant changes in pursuing treatment to address her multiple mental health diagnoses. The probability that such neglect will be repeated in the future is high due to [Mother] failing to address the issues which caused the juvenile to come into the custody of [DSS].

. . . .

19. [Mother] is not making adequate progress within a reasonable period of time under the plan.

20. [Mother] is not actively participating in or cooperating with the plan, the Department, and the Guardian ad Litem for the juvenile.

21. [Mother] does not remain available to the court, the Department, and the Guardian ad Litem for the juvenile.

22. [Mother] is acting in a manner inconsistent with the health or safety of the juvenile.

23. [Mother] is unfit and has acted inconsistently with her constitutionally protected status as a parent.

After making specific findings pertaining to the relevant factors, the trial court

distinctly determined Mother's likelihood of neglecting Zora in the future. *See id.* at

86, 876 S.E.2d at 265 ("After noting these factors, the trial court must then distinctly determine a parent's likelihood of neglecting a child in the future."). And we have already addressed the sufficiency of these Findings in section A of this opinion. *In re R.G.L.*, 379 N.C. at 456, 866 S.E.2d at 408; *Koufman*, 330 N.C. at 97, 408 S.E.2d at 731.

Mother asserts these findings are insufficient to support the trial court's conclusion that there was a high probability of repeated future neglect. *See, e.g., In re W.K.*, 379 N.C. 331, 343, 864 S.E.2d 313, 321 (2021) ("The trial court's determination that there existed a high probability of future neglect by respondent is more properly classified a conclusion of law . . . ."). Citing to *In re Z.D.*, 258 N.C. App. 441, 450–51, 812 S.E.2d 668, 675 (2018), Mother argues: "The fact that [she] had been diagnosed with a mental illness, without further findings of fact regarding how, if at all, they impaired her ability to parent, is not sufficient support for termination of her parental rights."

With respect to mental health conditions, "behavior emanating from a parent's mental health conditions may supply grounds for terminating parental rights only upon an analysis of the relevant facts and circumstances, such as the severity of the parent's condition and the extent to which the parent's behavior is consistent with recognizable symptoms of an illness." *In re A.L.L.*, 376 N.C. 99, 100, 852 S.E.2d 1, 3 (2020) (cleaned up). In *In re Z.D.*, the trial court terminated the respondent-mother's parental rights based on neglect where she had been diagnosed with bipolar disorder

and had "multiple episodes related to her mental illness." 258 N.C. App. at 450, 812 S.E.2d at 674–75. The trial court found that the parent's behavior during her visits "was consistently concerning" and "disturbing," ultimately finding that she was "unable to provide proper care for [her son]." *Id.* at 450, 812 S.E.2d at 675.

On appeal, a prior panel of this Court held those findings were insufficient to support a conclusion of neglect. *Id.* at 448, 812 S.E.2d at 674. The Court explained, the terms "concerning" and "disturbing" were deficiently subjective. *Id.* at 450, 812 S.E.2d at 675. Thus, the findings were "not sufficiently specific to determine what behavior [she] was exhibiting and how that behavior negatively impacted her son." *Id.* However, in the instant case, the trial court's findings were not ambiguous as to how Mother's mental health diagnosis, and her failure to address them, impacted the likelihood of repetition of neglect if Zora was returned to her care. *Cf. id.* And even if we were to assume that Mother's argument is correct, her contention fails to the consider the fact that, unlike *In re Z.D.*, the trial court rendered a battery of additional findings in support of its conclusion of future neglect. *Cf. id.* Whereas in *In re Z.D.*, the respondent had completed a significant portion of her case plan, and "the trial court based its termination of [the] [r]espondent's parental rights primarily on the issue of her mental health." *Id.* at 447, 812 S.E.2d at 673.

Mother further contends the fact that she failed to maintain suitable employment is not indicative or sufficient to support a conclusion of a likelihood of future neglect, citing to *In re Nesbitt*, 147 N.C. App. 349, 359, 555 S.E.2d 659, 665–

66 (2001). Yet *In re Nesbitt* did not concern the adjudication ground of neglect; instead, it dealt with the adjudication ground pursuant to subsection 7B-1111(a)(2)— that Mother willfully left the juvenile in foster care or placement outside the home for more than twelve months without showing to the satisfaction of the trial court that reasonable progress under the circumstances were made. *Cf. id.* at 351, 555 S.E.2d at 661. Unlike the matter *sub judice*, the *In re Nesbitt* Court found that the respondent parent was "extremely cooperative" with DSS and had made substantial progress on her case plan, including: securing a new home; maintaining a new home for almost a year; timely paying rent; timely making child support payments; maintaining employment; completing required parenting classes; completing mental health therapy; and regularly visiting the minor child. *Id.* at 358–60, 555 S.E.2d at 665–66. The Court noted that the evidence at bar was insufficient to demonstrate that the respondent parent's failure to make progress on her case plan was willful— a component not relevant for adjudication under N.C. Gen. Stat. § 7B-1111(a)(1). *See id.* at 360, 555 S.E.2d at 666 ("Even, assuming *arguendo,* that the court's finding of failure to make reasonable progress was supported by clear, cogent and convincing evidence, in order to uphold the trial court's order, we must find that Ms. Nesbitt's failure was willful."). Mother's reliance on *Nesbitt* is misplaced.

Mother next asserts that missed drug screens and substance abuse, standing alone, are insufficient to support the adjudication ground of neglect. *In re D.T.N.A.*, 250 N.C. App. 582, 585–86, 801 S.E.2d 642, 645 (2016) (cleaned up) ("A mere showing

that a parent has abused alcohol or drugs is insufficient to terminate parental rights. We can find no evidence to indicate that respondent's alleged drug or substance abuse would prevent him from providing for the proper care and supervision of Danny."). Mother maintains, pursuant to *In re A.N.H.*, that the trial court failed to render findings showing that her failure to adequately address her substance abuse caused physical, mental or emotional impairment to Zora. 381 N.C. 30, 47, 871 S.E.2d 792, 806 (2022) (cleaned up) ("There are no findings to support the conclusion that respondent's drug use will result in some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment . . . .").

Mother is correct insofar as when adjudicating a juvenile on the basis of neglect, "our courts have additionally required that there be some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide proper care, supervision, or discipline." *In re Stumbo*, 357 N.C. 279, 283, 582 S.E.2d 255, 258 (2003) (quoting *In re Safriet*, 112 N.C. App. 747, 752, 436 S.E.2d 898, 901–02 (1993)) (cleaned up); *see also In re A.N.H.*, 381 N.C. at 47, 871 S.E.2d at 806 (2022) (applying the logic of *In re Stumbo*, which dealt with a juvenile abuse/neglect/dependency petition, to the adjudication stage of a termination of parental rights proceeding); *see also In re K.B.*, 378 N.C. 601, 609, 862 S.E.2d 663, 671 (2021) (cleaned up) ("As noted above, to establish neglect, the conditions at issue must result in some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment . . . . Here, the trial court made

express findings that [the juveniles] were impaired or at a substantial risk of impairment as a result of respondent mother's neglect.").

That said, precedent establishes that the failure to expressly render such a finding is not fatal where the evidence can be inferred to support it. *See In re Safriet*, 112 N.C. App. at 753, 436 S.E.2d at 902 ("Although the trial court failed to make any findings of fact concerning the detrimental effect of Ms. Safriet's improper care on Daniel's physical, mental, or emotional well-being, all the evidence supports such a finding."); *see also In re Padgett*, 156 N.C. App. 644, 648, 577 S.E.2d 337, 340 (2003) ("Where there is no finding that the juvenile has been impaired or is at substantial risk of impairment, there is no error if all the evidence supports such a finding."); *see also In re C.C.*, 260 N.C. App. 182, 185, 817 S.E.2d 894, 897 (2018) ("However, even where the trial court makes no finding that a juvenile has been impaired or is at substantial risk of impairment there is no error if the evidence would support such a finding.").

As in *In re Safriet*, we hold that the record evidence supports such a finding. 112 N.C. App. at 753, 436 S.E.2d at 902. It is undisputed that Mother's substance use had previously impacted Zora's physical, mental, and emotional wellbeing; indeed, unchallenged Finding of Fact No. 10 notes the reasoning for the original adjudication was due to the fact that Mother was "unconscious, sitting behind the wheel of her vehicle while it was running" with Zora in the back seat. Further, Finding of Fact No. 18 notes that Mother: "failed to provide any meaningful support

or basic necessities for the juvenile during the period since the juvenile came into the custody of the Department"; and "lack[ed] an understanding of how her choices and actions impact[ed] the juvenile." And with respect to emotional wellbeing in particular, the GAL's report, prepared in advance of the termination hearing, noted that Zora had been unable to develop a consistent maternal bond with Mother in light of Mother's "lack of engagement and inconsistency with her case plan goals[.]" The DSS report similarly provided: "Due to the time being out of care, there is not a strong bond" between Mother and Zora. Finally, at the termination hearing, a DSS social worker testified to the fact that Mother's inaction toward her case plan in the six months leading up to the filing of the termination petition underscored that Mother was unable to provide proper care or supervision of Zora. The evidence therefore demonstrates that Mother's inactions—including failing to address substance abuse, complete drug screens, complete parenting classes, comply with the recommendations of treatment providers, participate in treatment services, maintain a stable home, and maintain a stable job—had a physical, mental, and emotional impact on Zora.

We also note that *In re A.N.H.* is distinguishable, as the respondent in that case had completed the vast majority of his case plan outside of testing positive for drugs. *Cf. In re A.N.H.*, 381 N.C. at 47, 871 S.E.2d at 806. Moreover, the *A.N.H.* Court's holding did not rise and fall on the trial court's failure to make such a finding

of impairment; instead, emphasizing that the respondent's positive drug screens—

standing alone—"says very little about his ability to parent his daughter":

> To be sure, respondent's substance abuse was recognized as a concern from the initiation of the case, and he was required to address it as part of his case plan. Respondent completed twenty hours of basic substance abuse treatment (four hours more than required by the assessment), but he also continued to test positive for amphetamines, methamphetamines, and cocaine on occasion after completing that treatment, and he denied using methamphetamine or any other drug at the termination hearing despite those positive test results. Respondent's denial of drug use despite the positive drug screens is some support for the trial court's finding that he failed to completely address his substance abuse issues. *But given the trial court's other findings of fact that are supported by the evidence, this says very little about his ability to parent his daughter.* There are no findings to support the conclusion that respondent's drug use will result in "some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment . . . ." *In re Stumbo*, 357 N.C. 279, 283, 582 S.E.2d 255 (2003); *cf. In re K.B.*, 378 N.C. 601, 2021-NCSC-108, ¶ 22, 862 S.E.2d 663 (affirming termination order on ground of neglect where "the trial court made express findings that [the juveniles] were impaired or at a substantial risk of impairment as a result of respondent mother's neglect"). *Thus, disregarding the trial court's findings that were not supported by evidence in the record, the trial court's conclusion that Annie would likely be neglected if returned to her father's care is not supported by the remaining findings of fact. As a result, the trial court's order adjudicating neglect as a ground for termination of respondent's parental rights under N.C.G.S. § 7B-1111(a)(1) must be vacated.*

*Id.* at 46–47, 871 S.E.2d at 806 (citation modified). The Court ultimately held,

"disregarding the trial court's findings that were not supported by evidence in the

record, the trial court's conclusion that Annie would likely be neglected if returned to her father's care is not supported by the remaining findings of fact." *Id.*

Moreover, in *In re G.C.*—a case decided after *In re A.N.H.*—the Supreme Court of North Carolina noted that there is no requirement to render a written finding of impairment when adjudicating a juvenile on the basis of neglect:

> This assessment remains useful and remains the law— there must "be some physical, mental, or emotional impairment of the juvenile *or a substantial risk of such impairment* as a consequence of the failure to provide 'proper care, supervision, or discipline.'" *In re J.A.M.*, 372 N.C. at 9 (quoting *In re Stumbo*, 357 N.C. at 283). However, to be clear, there is no requirement of a specific written finding of a substantial risk of impairment. As raised by DSS, a substantial risk of impairment is not contained in the statutory definition of neglect. *See* N.C.G.S. § 7B-101(15). Rather, the trial court must make written findings of fact sufficient to support its conclusion of law of neglect. And in this matter, the trial court's written findings of fact support its conclusion that Glenda is a neglected juvenile.

*In re G.C.*, 384 N.C. 62, 69, 884 S.E.2d 658, 663 (2023).

We acknowledge that *In re G.C.* dealt with an adjudication under Article 4 of Chapter 7B while *In re A.N.H.* dealt with the termination of parental rights under Article 11 of Chapter 7B. *Compare In re G.C.*, 384 N.C. at 63, 884 S.E.2d at 659, *with In re A.N.H.*, 381 N.C. at 34, 871 S.E.2d at 798–99; *Compare* N.C. Gen. Stat. § 7B-400 et seq., *with id.* § 7B-1100 et seq. However, termination cases like *In re K.B.* and *In re A.N.H.* have applied the logic of *In re Stumbo* and *In re Safriet* to termination of parental rights proceedings—that there be a showing of impairment to terminate

parental rights on the basis of neglect. *See In re K.B.*, 378 N.C. at 607, 862 S.E.2d at 670 (quoting *In re Stumbo*, 357 N.C. at 283, 582 S.E.2d at 258) ("The conditions at issue must result in 'some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment . . . .'"); *see also In re A.N.H.*, 381 N.C. at 47, 871 S.E.2d at 806 (quoting *In re Stumbo*, 357 N.C. at 283, 582 S.E.2d at 258) ("There are no findings to support the conclusion that respondent's drug use will result in 'some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment . . . .'"). For all these reasons, Mother's argument is overruled.

Having addressed Mother's contentions, our review of the trial court's findings leads us to hold that they support the trial court's conclusion of law—that Mother is likely to neglect Zora in the future. *In re M.B.*, 382 N.C. at 86, 876 S.E.2d at 264. The findings establish that between the original adjudication and the time of the termination proceeding, Mother: failed to complete a substantial amount of drug screens; routinely failed to answer the phone or provided false reasons when asked to provide a drug screen; failed to complete any parenting classes;[5] failed to comply with the recommendations of treatment providers to receive mental health treatment; failed to participate in treatment services; and failed to make any significant changes

---

[5] Mother also contends that her failure to complete parenting classes is not indicative, or compelling evidence, of future neglect. Even if we assume the failure to complete parenting classes, standing alone, is insufficient, the trial court's conclusion in the instant case is supported by several additional findings, including: failing to address substance abuse; failing to complete drug screens; failing to comply with the recommendations of treatment providers; failing to participate in treatment services; failing to maintain a stable home; and failing to maintain a stable job. Accordingly, Mother's contention is meritless.

in pursuing treatment to address her multiple mental health diagnoses. *In re R.L.D.*, 375 N.C. at 841, 851 S.E.2d at 20. The findings also show that by the time of the termination proceeding, Mother's employment and living situations were unknown to DSS; Mother never provided verifiable proof of income or employment to DSS; and that DSS had made multiple attempts to visit Mother's home, none of which were successful. *See id.*

Viewed together, the findings demonstrate that: Zora was previously adjudicated neglected in the past; and, based on Mother's failure to make progress to the vast majority of her case plan between the original adjudication and the time of the termination proceeding, that Zora will likely be neglected by Mother in the future. *In re M.B.*, 382 N.C. at 86, 876 S.E.2d at 264; *see also In re M.A.*, 374 N.C. 865, 870, 844 S.E.2d 916, 921 (2020) ("A parent's failure to make progress in completing a case plan is indicative of a likelihood of future neglect."). Additionally, although the trial court failed to render an express finding, the evidence demonstrates that Mother's actions had a detrimental effect on Zora's mental, physical, and emotional wellbeing. *In re Safriet*, 112 N.C. App. at 753, 436 S.E.2d at 902. Since we have determined the trial court's order may be upheld on the ground of neglect, we decline to extend our review further. *See, e.g., In re C.K.I.*, 379 N.C. at 210, 864 S.E.2d at 326 ("Because a single ground for terminating parental rights is sufficient to support a termination order, this Court can uphold the trial court's order based on one ground without reviewing any remaining ground.").

## III. Conclusion

The trial court committed error by rendering a finding concerning current neglect; otherwise, the challenged findings are supported by clear, cogent, and convincing evidence. Notwithstanding this error, the trial court's conclusion of law—that grounds exist to terminate Mother's parental rights based on neglect pursuant to N.C. Gen. Stat. § 7B-1111(a)(1)—is supported by its findings of fact. *See, e.g., In re M.Y.P.*, 378 N.C. 667, 676, 862 S.E.2d 773, 780 (2021) ("Regardless of our conclusion that the above findings of fact are unsupported, such error is harmless as the remaining findings in the trial court's order still support its conclusion that respondent's rights were subject to termination based on neglect."). Since the trial court did not err in adjudicating grounds for termination, and Mother does not challenge the trial court's best interests determination at the disposition stage of the proceedings, we affirm the trial court's termination of Mother's parental rights. *See, e.g., In re C.K.I.*, 379 N.C. at 210, 864 S.E.2d at 326.

AFFIRMED.

Judges COLLINS and CARPENTER concur.

Report per Rule 30(e).